Glenn LONDRE, a minor, by his Guardian ad Litem, James R. Long; Gerald Londre, and Sandra Londre, his wife, parents and natural guardians of Glenn Londre, Plaintiffs-Respondents,

v.

CONTINENTAL WESTERN INSURANCE COMPANY, Defendant-Appellant,

Robert J. ROBINSON, Badger Mutual Insurance Company and Richard Robinson, Rural Mutual Insurance Company and Kobussen Bus Company, Defendants.†

Court of Appeals

*No. 83–335. Submitted on briefs October 24, 1983.—Decided December 20, 1983.*
(Also reported in 343 N.W.2d 128.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Gabert & Williams* and *Thomas L. Williams* of Appleton.

For the respondents the cause was submitted on the brief of *Herrling, Clark, Hartzheim & Siddall, Ltd.*, and *Roger W. Clark* of Appleton.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. Continental Western Insurance Company appeals the trial court's denial of its motion for summary judgment. The court held that Continental's homeowner's insurance policy, issued to Robert Robinson, covered the negligent acts of his son, Richard, because he was a resident of his father's household. The sole issue on appeal is whether Richard, a child of divorced parents, was a resident of his noncustodial father's household for insurance purposes at the time he injured Glenn Londre's eye. Under the particular circumstances of this case, we hold that, as a matter of law, Richard was not a resident of his father's household at the time of the negligent act.

Richard's parents were divorced in 1971, and his mother was granted legal custody of Richard. His father was granted reasonable visitation and was ordered to maintain health insurance coverage for Richard. Following the divorce, Richard's parents each remarried and established separate homes twenty miles apart. Richard's father exercised visitation rights occasionally on weekends and approximately two to four weeks in ths summer, excluding weekends.

Both of Richard's parents obtained homeowner's insurance policies. His father's policy with Continental extended coverage to, "[i]f residents of the Named Insured's household, his spouse, the relatives of either, and any other persons under the age of twenty-one in the care of any Insured."

Richard is alleged to have thrown a stick and severely injured Glenn Londre's eye in September, 1979. Richard was not visiting his father at the time, and the incident occurred on a school bus in his mother's hometown.

The trial court correctly held that the policy covered only residents of the named insured's household, and the issue on appeal is whether Richard was a resident of his father's household for insurance purposes at the time of the alleged negligent act. The court held that the

phrase "resident of the Named Insured's household" was vague and ambiguous. It therefore construed the term "resident" in favor of coverage for Richard, *see Stanhope v. Brown County,* 90 Wis. 2d 823, 849, 280 N.W.2d 711, 722 (1979), concluding that he was a resident of both parents' households.

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2), Stats. In this case, the facts are undisputed. They were fully developed through depositions and stand uncontroverted. If the trial court's legal conclusion that Richard was covered by the Continental policy is in error, we must reverse. *See Wright v. Hasley,* 86 Wis. 2d 572, 579, 273 N.W.2d 319, 322–23 (1979).

Words or phrases of an insurance policy are ambiguous when they are reasonably susceptible to more than one construction. *Stanhope,* 90 Wis. 2d at 849, 280 N.W.2d at 722. Although ambiguities are to be construed against the insurer, in the absence of ambiguity a court cannot construe a policy to include coverage not agreed to by the parties. *Mercado v. Mitchell,* 83 Wis. 2d 17, 25, 264 N.W.2d 532, 536 (1978).

A determination of whether a person is a resident of a household for insurance purposes requires a thorough examination of all relevant facts and circumstances and depends upon whether the person and the named insured are:

(1) living under the same roof; (2) in a close, intimate and informal relationship, and (3) where the intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contract-

ing about such matters as insurance or in their conduct in reliance thereon.

*A.G. v. Travelers Insurance Co.,* 112 Wis. 2d 18, 21, 331 N.W.2d 643, 645 (Ct. App. 1983). The listing of these three factors, however, does not result in a mandatory threefold test. No single factor is the sole or controlling test of whether a person is a resident of a household. *See Belling v. Harn,* 65 Wis. 2d 108, 113, 221 N.W.2d 888, 891 (1974). For example, members of a family need not actually reside under a common roof in order to be deemed part of the same household. *Doern v. Crawford,* 30 Wis. 2d 206, 213, 140 N.W.2d 193, 196 (1966). The term "household" is defined as those who dwell under the same roof and constitute a family. *Lontkowski v. Ignarski,* 6 Wis. 2d 561, 565, 95 N.W.2d 230, 232.

Additionally, our courts have recognized the difference between the meaning of "domicile" and "household." The material difference is that a domicile once acquired is not lost when a person leaves it, even though intending to never return, until he establishes a domicile elsewhere. On the other hand, physical absence coupled with intent not to return is sufficient to sever the absent person's membership in a household. *Doern,* 30 Wis. 2d at 213, 140 N.W.2d at 196. Thus, while a person may have only one true domicile, he may have more than one household. We agree with jurisdictions concluding that a person may be a resident of more than one household for insurance purposes. *See Miller v. United States Fidelity and Guaranty Co.,* 316 A.2d 51, 55 (N.J. 1974). Consequently, Richard could be a resident of two separate households for purposes of insurance coverage. The fact that he was a resident of his custodial mother's household does not, as a matter of law, preclude a finding that he was also a resident of his father's household.

Over the years, many jurisdictions have been faced with similar problems of deciding whether, on a given set of facts, individuals are residents or members of a particular household. In each case, the decision has depended upon the particular factual circumstances. *See* 93 A.L.R.3d 438–43 (1979) and 96 A.L.R.3d 810–20 (1979). This has become especially true today in light of a variety of child custody arrangements in divorce proceedings. In Wisconsin, both parents may share joint custody. *See* sec. 767.24(1)(b), Stats. The child could therefore possibly become a member of both parents' households for insurance purposes. It has also become common for the child to have a continuing relationship with the noncustodial parent through frequent and regular visitation, such that the child becomes an integrated member of both households. Thus, the question of whether Richard was a resident of his noncustodial father's household must depend upon the particular factual circumstances.

■
We are persuaded that, under the particular facts of this case, the expression "residents of the Named Insured's household" cannot be reasonably construed to extend coverage to Richard under his father's homeowner's insurance policy. At the time of the incident alleged in Londre's complaint, Richard was not living under the same roof as his father, either on a permanent basis or on a visit. The record of continuing visits between Richard and his father, sometimes for a few days at a time, is sufficient to support the trial court's inference that Richard enjoyed a close, intimate, and informal relationship with his father. The record also shows, however, that Richard was not an integrated member of his father's household. Richard testified that at the time of the incident, he considered his mother's place as home. Richard's mother stated that she considered her place to be

his home. She also testified that Richard lived with her on a regular basis except for Richard's occasional visits with his father.

The father maintained a separate, distinct household and had irregular visits with his son. When asked about his visitation with Richard before the incident, the father testified: "I didn't see him that often. I had the right to see him whenever I can make arrangements with his mother, but I didn't really see him a whole heck of a lot." The father also stated that from Christmas of 1978 to the summer of 1979, he visited his son maybe once on a weekend to go up north. During the summer of 1979, his son visited him a total of two to four weeks. On weekends, however, Richard would return to live with his mother.

While we agree that a child might acquire more than one residence by dividing time between two households on a regular basis so as to become an integrated member of both parents' households, Richard did not live at his father's home on a regular or frequent basis. Consequently, he was not a resident of his father's household.

Additionally, without case law directly on point, the Wisconsin Supreme Court has indicated that the expression "resident of a household" in an insurance policy would not extend coverage to a situation such as this. In *Herbst v. Hansen,* 46 Wis. 2d 697, 698–700, 176 N.W.2d 380, 381–82 (1970), an insurer sought summary judgment arguing that a child was not a resident of his father's household and thus not covered under his father's uninsured motorist insurance policy. The child's parents were legally separated, living apart, and his mother had been awarded custody. Since there was evidence that reconciliation had been seriously considered by the par-

ents, the supreme court held that the father's absence could be only temporary and he could have remained a member of the same household as his wife and son. The supreme court affirmed the trial court's denial of the motion for summary judgment. The court went on to state, however, "[a]s a matter of *dicta,* . . . if Mrs. Herbst had obtained an absolute divorce it would be appropriate to rule, as a matter of law, that Clarence Herbst's absence from the household was of a permanent nature." *Id.* at 706, 176 N.W.2d at 385–86. That dicta's validity was reasserted in *Belling,* 65 Wis. 2d at 117, 221 N.W.2d at 893. Because there was no dispute as to any material fact, and because Robert's homeowner's policy did not extend coverage to non-residents such as Richard, Continental was entitled to summary judgment.

*By the Court.*—Order reversed and cause remanded with directions to grant the appellants' motion and enter summary judgment dismissing the complaint as to Continental.