The FARMERS AUTOMOBILE
INSURANCE ASSOCIATION,
Plaintiff,

v.

Gerald DANFORTH as legal Representative of the Estate of Thomas Danforth, Deceased, Defendant.

No. 97–C–839.

United States District Court,
E.D. Wisconsin.

July 7, 1998.

Michael T. Hopkins, Hopkins Law Office, Mequon, WI, for Plaintiff.

William L. Sundberg, Sundberg & Hessman, Tallahassee, FL, for Defendant.

DECISION and ORDER

MYRON L. GORDON, District Judge.

On August 6, 1997, the plaintiff, The Farmers Automobile Insurance Association ["Farmers"], filed a complaint seeking a judgment declaring that it had no duty or obligation to pay uninsured motorist benefits to Gerald Danforth ["Gerald"], on behalf of the estate of Thomas Danforth ["Thomas"] because Thomas was not an "insured" under an insurance policy issued to Gerald by Farmers. The defendant filed a counterclaim alleging that Farmers' denial of his claim for benefits violates the terms of the

insurance policy. Presently before the court is Farmers' motion for summary judgment. The motion will be denied.

## I. FARMERS' MOTION TO HAVE FACTS DEEMED ADMITTED

Farmers has moved to have numerous facts deemed admitted on the ground that the defendant has not adequately supported his contention that a dispute exists as to such facts. Specifically, Farmers argues that the factual averments set forth in paragraphs 6, 10, 13, 16, 18, 20, 31, 34 and 38 of Farmers' Statement of Material Facts should be stricken and those factual averments should be deemed admitted because Gerald did not contest these factual averments and because his citations to evidence do not establish a dispute as to these facts.

■ In my opinion, Farmers' "Motion to Have Facts Deemed Admitted" is unnecessary under the procedure set forth in Local Rule 6.05. Pursuant to this local rule, the court is obliged either to accept or reject Farmers' proposed findings of fact based on the support that Farmers' has given as well as the contrary evidence that Gerald has provided in support for his contention that a dispute exists. Implicit in the statement of the undisputed material facts in this decision and order is the court's assessment of the factual support for Farmers' proposed factual findings and Gerald's response to those factual findings. In view of the procedure contemplated under Local Rule 6.05, I will deny Farmers' "Motion to Have Facts Deemed Admitted."

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues of material facts and the movant is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. In order to succeed on a motion for summary judgment, the movant must show the following: (1) no genuine issue of material fact exists; and (2) its entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only "genuine" issues of "material" fact will defeat an otherwise prop-erly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As defined by the United States Supreme Court, "material" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Id.*, at 248, 106 S.Ct. 2505. A dispute over such facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). If the evidence presented by the opposing party is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Id.* 477 U.S. at 249–250, 106 S.Ct. 2505.

## III. UNDISPUTED FACTS

The parties have followed the procedure set forth in Local Rule 6.05 for submitting proposed findings of fact. Based on the parties' submissions, the court finds the following facts to be undisputed. Farmers issued a policy of insurance numbered 001224538 to Gerald as the named insured. The policy, which was effective from November 16, 1996, to and including February 8, 1997, provided for uninsured motorist coverage subject to a limit of liability of $100,000 per person. (Farmers' Proposed Findings ["Farmers' P.F."], ¶ 3, Ex. H .) The provisions of the policy pertaining to uninsured motorist coverage provides, in part:

A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

1. Sustained by an "insured;" and

2. Caused by an accident.

B. "Insured" as used in the Part means:

1. You or any "family member."

(Farmers' P.F. ¶ 3. Ex. H.) The insurance policy defines the phrase "family member" as follows:

> "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

(*Id.*) On November 16, 1996, Gerald's minor son, Thomas, was killed in Jacksonville, Florida, while riding as a passenger in an uninsured motor vehicle. (Farmers' P.F. ¶ 8.) Thomas was 17 years old at the time of his death. (Ex. E.)

Rose Mary Danforth is the mother of Thomas. (Farmers' P.F. ¶ 4.) Gerald and Rose Mary divorced in 1992. (Farmers' P.F. ¶ 5.) The divorce decree provides that Rose Mary "shall be the primary residential and custodial parent" of Thomas and that Gerald was the "secondary residential parent." (Farmers' P.F. ¶ 6; Ex. C at ¶ 2 .) Gerald paid child support in the amount of $500 per month for Thomas from the date of the divorce decree in 1992 until his death. (Danforth's P.F. ¶ 31.)

Rose Mary lives at 6728 Harlow Boulevard in Jacksonville, Florida. (Farmers' P.F. ¶ 7, Ex. A at 5.) At the time of Thomas' accident, Gerald lived on the Oneida Indian Reservation in Oneida, Wisconsin. (Gerald Danforth Proposed Findings ["Danforth P.F."] ¶ 6.) The police report prepared in connection with Thomas' accident as well as Thomas' death certificate identify his address as 6728 Harlow Boulevard, Jacksonville, Florida. (Farmers' P.F. ¶¶ 9 and 10.) That address was provided by Gerald who is identified on the death certificate as the informant. (Farmers' P.F. ¶ 11.)

At the time of his death, Thomas was on probation in Florida in connection with a conviction for car theft. (Farmers' P.F. ¶ 12.) Under the terms of Thomas' probation, he was under the custody of Florida's Department of Juvenile Justice "for an indeterminate period of time until legally discharged therefrom, provided [that] such commitment shall not extend beyond [his] 19th birthday." Because of his probation, Thomas was prohibited from living in Wisconsin in the absence of an agreement by the state of Wisconsin to assume financial responsibility

for that probation. (Farmers' P.F. ¶ 13.) Gerald and Rose Mary were aware of this fact, but Gerald continued to make attempts to transfer Thomas' probation to Wisconsin. (Danforth's P.F. ¶¶ 22, 47 and 52.)

At the time of his death, Thomas was living in an apartment in the Northlake Apartment complex on Dunn Road in Jacksonville, Florida on a temporary basis as a result of his participation in a juvenile rehabilitation program. (Farmers' P.F. ¶ 14; Danforth P.F. ¶ 24.) Through this program, the state of Florida paid for his utilities, gave him a check for food, provided him with a bicycle and furnished him with spending money. (Farmers' P.F. ¶ 15.) During this period, Thomas received his mail at his apartment and at his mothers' address where he had lived prior to participating in the rehabilitation program. (Farmers' P.F. ¶¶ 16 and 17.)

Thomas' military identification card and his bank account at the Jacksonville Navy Federal Credit Union listed his address as 6728 Harlow Boulevard, Jacksonville, Florida. (Farmers' P.F. ¶¶ 18, 20, and 21.) At the time of his death, Thomas was involved in many activities in the Jacksonville, Florida community. For example, he belonged to the "Project: Save Our Students" program, he was a member of an Alcoholics Anonymous chapter in the community, he was an active member of Sacred Heart Catholic Church and held a job at a Wal–Mart store in Jacksonville. (Farmers' P.F. ¶¶ 23–26.) Wal–Mart sent Thomas' W–2 forms to Rose Mary's house. (Farmers' P.F. ¶ 27.)

Rose Mary claimed Thomas as a dependent on her 1996 income taxes but Gerald did not. (Farmers' P.F. ¶¶ 29 and 30.) Prior to his death, Thomas had lived with his father in Jacksonville Beach, Florida in 1989 and in Norfolk, Virginia in 1992. (Danforth's P.F. ¶ 7.) When he lived with his father on these two occasions, Thomas was enrolled in school. (Danforth's P.F. ¶ 8.)

In 1995, Gerald contacted Oneida Social Services to have Thomas' probation transferred to the Oneida Indian Reservation in Wisconsin but such efforts were not successful. (Danforth's P.F. ¶ 22.) The first time

Thomas visited Gerald in Oneida was in May or June of 1996. (Farmers' P.F. ¶ 31.) In August 1996, Rose Mary told Gerald that Thomas could no longer stay at her home because he was using drugs and/or alcohol and was "out of control." (Danforth's P.F. ¶¶ 26 and 28.) As a result, Thomas went to stay with his father in Oneida in August of 1996. (Farmers' P.F. ¶ 35; Danforth's P.F. ¶ 9.) The parties dispute whether Thomas and his parents intended for him to live with his father on a permanent basis or whether his trip to Oneida was merely a visit. When Thomas arrived in Wisconsin in August of 1996, he brought clothes and other personal belongings in a suitcase. (Farmers P.F. ¶ 33; Danforth's P.F. ¶ 25.) Upon Thomas's arrival in Oneida, in August of 1996, he went to the appropriate authorities at the tribe and registered for and received an enrollment card from the Oneida Tribe. (Danforth's P.F. ¶ 37.)

Gerald's application for insurance with Farmers listed only himself and his wife, Snow Danforth, as "residents and dependents."

## IV. ANALYSIS

Gerald claims that he is entitled to benefits under the terms of the insurance policy because Thomas was a "resident" of his household at the time of his death. In its motion, Farmers contends that it is entitled to summary judgment because the undisputed material facts demonstrate that Thomas did not reside in Gerald's household but was merely a visitor.

█ A determination of whether a person is a resident of a household for insurance purposes is a fact intensive inquiry which depends upon whether:

(1) the person and the named insured are living under the same roof; (2) the person and the named insured are in a close, intimate and informal relationship; and (3) the intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is "reasonable to conclude that the parties would consider the relationship in contracting about such

matters as insurance or in their conduct in reliance thereon."

*See Londre by Long v. Continental Western Ins. Co.*, 117 Wis.2d 54, 57–58, 343 N.W.2d 128 (Ct.App.1983), citing *A.G. by Waite v. Travelers Ins. Co.*, 112 Wis.2d 18, 21, 331 N.W.2d 643 (Ct.App.1983). Although Wisconsin courts have cited these three factors as relevant to the residency inquiry, those courts have also stated that no single factor is controlling as to whether a person is a resident of a household. *Londre*, 117 Wis.2d at 58, 343 N.W.2d 128. Members of a household are not required to live under the same roof to be considered part of the same household. *Doern v. Crawford*, 30 Wis.2d 206, 213, 140 N.W.2d 193 (1966); *Ross by Rodli v. Martini*, 204 Wis.2d 354, 359, 555 N.W.2d 381 (Ct.App.), *rev. denied*, 207 Wis.2d 287, 560 N.W.2d 276 (1996). Moreover, under Wisconsin law, a person may be a member of more than one household for insurance purposes. *Id.*

█ Gerald argues that summary judgment is not warranted because a genuine issue of material fact exists as to whether the parties involved—Thomas, Gerald and Rose Mary—intended Thomas' stay with Gerald in August 1996 to be permanent. Farmers asserts that this fact is not a "material" one in this case. According to Farmers, the parties' intent to have Thomas stay with his father on a permanent basis is irrelevant to the issue of residency because the terms of Thomas' probation made it legally impossible for Thomas to reside with his father in the state of Wisconsin.

The Wisconsin court of appeals rejected an argument similar to the one advanced by Farmers in *Ross by Rodli v. Martini*. In that case the state appellate court found a father's intent to have his son live with him to be relevant notwithstanding the existence of a one-year injunction preventing a father from contacting his son. *Ross*, 204 Wis.2d at 359, 555 N.W.2d 381. The Wisconsin court of appeals held that "legal custody, coupled with a parent's intent to continue a long established living situation with the minor" sufficiently established residency in the father's household "even though the child may

be temporarily absent from the household." *Id.* at 360, 555 N.W.2d 381.

Farmers contends that *Ross* is distinguishable from the instant case because Gerald did not have custody of Thomas and there was no "long established living situation" between Gerald and Thomas. Although Gerald did not have legal custody of Thomas, I do not believe this difference alone renders *Ross* inapplicable. As noted by the Wisconsin court of appeals, the issue of residency is fact intensive and does not turn on any one factor. *Londre,* 117 Wis.2d at 58, 343 N.W.2d 128. Moreover, there is evidence suggesting that Thomas and Gerald had lived together for an extended period in the past. For instance, Gerald has testified that Thomas lived with him on a permanent basis on two occasions prior to 1996—once in 1989 and once again in 1992. (Danforth P.F. ¶ 7.) Thus, I believe that the court's holding in *Ross* is applicable to the case at hand.

Based on the state courts' decisions in *Ross* and *Londre,* I find that the issue of Gerald's intent with respect to Thomas' living situation is material to the court's determination of residency notwithstanding the fact that at the time of his death Thomas could not legally reside with his father. Further, I find that a genuine issue exists with respect to whether Thomas and his parents actually intended that he live with his father on a permanent basis. Although Rose Mary stated in her deposition that Thomas advised her that he would not live with Gerald (Farmers' P.F. ¶ 35 and 40), there is also evidence in the record suggesting that Gerald, Rose Mary and Thomas intended that Thomas' stay with Gerald would be permanent (Danforth P.F. ¶¶ 9, 10, 14, and 36; Farmers' Response to Danforth P.F.).

In my opinion, a genuine issue of material fact exists as to whether the living relationship between Thomas and Gerald was intended to be permanent. Accordingly, Farmers' motion for summary judgment will be denied.

Therefore, IT IS ORDERED that Farmers' "Motion to Have Facts Deemed Admitted" be and hereby is denied.

IT IS ALSO ORDERED that Farmers' motion for summary judgment be and hereby is denied, with costs.