Charlene A. SEICHTER, and James D. Johnson, Plaintiffs-Respondents,

v.

Joseph L. McDONALD, Defendant-Respondent,

DARLINGTON MUTUAL INSURANCE COMPANY, Intervening Defendant-Appellant.†

Court of Appeals

*No. 98–2972. Submitted on briefs May 6, 1999.—Decided June 17, 1999.*

(Also reported in 599 N.W.2d 71.)

†Petition to review denied.

On behalf of the intervening defendant-appellant, the cause was submitted on the briefs of *Arnold P. Anderson* of *Mohr & Anderson* of Madison.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Patrick K. McDonald* of *McDonald & Gustafson, S.C.* of Janesville.

Before Dykman, P.J., Eich and Deininger, JJ.

EICH, J.   Charlene Seichter's and James Johnson's daughter was killed when an all-terrain vehicle on which she was a passenger crashed. They sued the driver of the vehicle, Joseph McDonald, and Darlington Mutual Insurance Company, who had issued a homeowners' policy to McDonald's parents. Under its terms, the policy would cover McDonald as an insured if, at the time of the accident, he was a resident of his parents' household. That was the sole issue at trial, and the jury determined that he was. Darlington moved to change the jury's answers, for judgment notwithstanding the verdict, and for a new trial. The circuit court denied the motions and entered judgment on the verdict.

Darlington appeals, arguing that: (1) as a matter of law, McDonald was not a resident of his parents' household at the time of the accident, and therefore was not covered under his parents' policy; and (2) the jury instruction on residency misstated the law. We reject the arguments and affirm the judgment and order.

McDonald was twenty-two years old when the accident occurred. He had graduated from high school four years earlier and lived on his parents' farm near Gratiot while attending college. He left school after one semester and remained at home, working on the farm,

for nine or ten months. In the fall of 1993, McDonald began working full-time near Madison, still living at home. In December 1994, he began sharing an apartment in Madison with several other people and began attending school part-time at the Madison Area Technical College. In the fall of 1995, McDonald quit his job and began attending MATC full time; and this was his situation on June 29, 1996, the time of the accident. Other facts will be discussed below.

■

We will uphold a jury verdict unless, "considering all credible evidence and reasonable inferences therefrom in the light most favorable [to the verdict], there is no credible evidence to sustain [it]." RULE 805.14(1), STATS.; *Watts v. Watts*, 152 Wis. 2d 370, 380, 448 N.W.2d 292, 296 (Ct. App. 1989). And we give special weight to the jury's finding where, as here, it has the specific approval of the trial court. *Nieuwendorp v. American Family Ins. Co.*, 191 Wis. 2d 462, 472, 529 N.W.2d 594, 598 (1995).

Darlington's challenge, however, does not go to the jury's assessment of the facts, but to the legal propriety of the verdict. It argues that the verdict was contrary to established law, and it bases that argument solely on *Doern v. Crawford*, 30 Wis. 2d 206, 140 N.W.2d 193 (1966). As here, the issue in *Doern* was whether the driver of a vehicle involved in an accident was residing in the same household as the insured. The driver was the insured's stepson and he, his mother and the insured had lived together until a few days prior to the accident when the insured sued his wife for divorce and moved into a hotel. The trial court granted summary judgment declaring that the stepson was covered by the policy. On appeal, the supreme court concluded that there was a dispute of material fact as to whether

the insured's departure from the household "was intended by him to be permanent or temporary," and sent the case back to the circuit court for trial. *Id.* at 214, 140 N.W.2d at 196. The court stated at one point in its discussion that "physical absence coupled with intent not to return is sufficient to sever the absent person's membership in the household," *id.* at 213, 140 N.W.2d at 196,[1] and Darlington seizes upon this statement as the cornerstone of its argument. Pointing to the fact that McDonald (a) had moved out of his parents' farm approximately one and one-half years prior to the accident, and (b) had apparently expressed his intent not to become a farmer or to return to live permanently with his parents, Darlington argues that the import of *Doern* is that, as a matter of law, McDonald was not a member of his parents' household on the date of the accident.

We disagree. In its discussion of the issue, the *Doern* court recognized that determining the existence of a household relationship involves consideration of all of the relevant circumstances, as do all of the cases the court discussed in its analysis. *Id.,* 30 Wis. 2d at 212–13, 140 N.W.2d at 195. And nowhere in the *Doern* opinion does the court state that expression of an intent not to return is anything other than one of sev-

[1] In a later case, *Belling v. Harn,* 65 Wis. 2d 108, 221 N.W.2d 888 (1974), the court stated that *Doern v. Crawford,* 30 Wis. 2d 206, 140 N.W.2d 193 (1966), should not be read to hold that "removal from a household following commencement of divorce proceedings and during the pendency of the action can be a factor to be given weight in determining residency in a family household. . . ." *Belling* at 116, 221 N.W.2d at 893. We do not see *Belling* as defeating Darlington's argument on that basis, however, as the *Belling* court's overruling of *Doern* appears to be limited to the context of divorce proceedings.

843

eral factors to be considered. Indeed, only a few sentences later, the court states quite plainly that a statement in the insured's affidavit that he had left the family household with ·intent not to return was "[not] conclusive on th[e] issue." *Id.* at 214, 140 N.W.2d at 196. Finally, we note that, in a subsequent case, the supreme court, after discussing *Doern* and a variety of other cases, stated that "previous decisions of this court indicate that no one factor is controlling [on the question of household membership] but that all of the elements must combine to a greater or lesser degree in order to establish the relationship." *Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis. 2d 27, 37, 197 N.W.2d 783, 789 (1972). Specifically, the court stated in *Pamperin* that, with respect to one who has absented himself or herself from the household, "the subjective or declared intent of the individual, while a fact to be considered, is not controlling," and that whether the absence is permanent "oftentimes must be determined only after a thorough examination of all of the relevant facts and circumstances. . . ." *Id.* at 35, 197 N.W.2d at 788.

Under the cases, then, the household-residency determination depends upon the particular factual circumstances in each case. It is a fact-intensive inquiry which considers whether the person and the named insurer are:

(1) living under the same roof;[2] (2) in a close, intimate and informal relationship; and (3) where the

---

[2] *See,* however, *Londre v. Continental Western Ins. Co.*, 117 Wis. 2d 54, 58, 343 N.W.2d 128, 130 (Ct. App. 1983), where, quoting from *Doern*, we recognized that "members of a family need not actually reside under a common roof in order to be

intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon.

*Pamperin*, 55 Wis. 2d at 37, 197 N.W.2d at 788. In a Minnesota case, *Schoer v. West Bend Mutual Ins., Co.*, 473 N.W.2d 73 (Minn. App. 1991)—which we cited with approval in *Ross v. Martini*, 204 Wis. 2d 354, 358, 555 N.W.2d 381, 383 (Ct. App. 1996)—the court, after quoting the *Pamperin* three-factor test, went on to state that, in applying the test:

The fact finder considers:

(1) age of the person;

(2) whether a separate residence is established;

(3) self-sufficiency of the person;

(4) frequency and the duration of the stay in the family home; and

(5) intent to return.

Personal possessions remaining in the home and that the home continues to be the mailing address may be considered but are not dispositive. A determination of residency in a household is fact specific to each case.

*Schoer*, 473 N.W.2d at 76.

deemed part of the same household." We also noted that "a person . . . may have more than one household." *Id.* at 58, 343 N.W.2d at 131.

Applying these principles to the facts of this case, the trial testimony established that although McDonald lived in various apartments in Madison after December 1994, he maintained strong ties with his parents and the farm—staying overnight on a regular basis and helping with field work three to four times a week during planting and harvest seasons. He had free access to the home and was welcome to bring friends whether his parents were present or not. There were no restrictions on his use of family goods, equipment, vehicles, and gasoline. He kept clothing in the bedroom his parents maintained for him in the family home, and one of the two vehicles he owned was kept at the farm at all times. Both his cars were insured through his parents' State Farm policy. His driver's license, hunting license and credit cards listed the farm's address as his place of residence. He voted and banked in Gratiot, and his 1995 tax returns and W–2 forms listed the farm as his address.

We believe a jury could reasonably find on this evidence that, at the time of the accident, McDonald was a resident of his parents' household.

Finally, we reject Darlington's argument that the trial court misinstructed the jury on residency. In essence, the instruction given by the court informed the jury that: (a) a person may be a resident of more than one household for insurance purposes; (b) members of a household are not required to live under the same roof to be considered part of the same household; and (c) in determining residency, the jurors should consider the three *Pamperin* factors we have discussed above. There is no question that the instruction is legally sound in light of the cases we have discussed above. Darlington argues, however, that the instruc-

tion did not fairly inform the jury of the applicable law because it did not tell them that "absence from the McDonald home coupled with an intent not to return meant that Joseph was not a resident of his parents' household." As we have held above, we do not consider that statement to be legally accurate. *See* our discussion of *Doern v. Crawford, supra.*

■

A trial court possesses broad discretion to choose the language and emphasis of jury instructions as long as they fully and fairly inform the jury of the rules of law applicable to the case. *State v. McCoy*, 143 Wis. 2d 274, 289, 421 N.W.2d 107, 112 (1988); *State v. Boshcka*, 178 Wis. 2d 628, 636, 496 N.W.2d 627, 629 (Ct. App. 1992). And if the court's instructions "adequately cover the law" and "fairly inform the jury of the law applicable to the particular case," that discretion is properly exercised. *Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 24, 531 N.W.2d 597, 604 (1995); *State v. Lohmeier*, 196 Wis. 2d 432, 441, 538 N.W.2d 821, 824 (Ct. App. 1995), *rev'd on other grounds*, 205 Wis. 2d 183, 556 N.W.2d 90 (1996). We see no error in the instruction.

*By the Court.*—Judgment and order affirmed.