Melanie Bauer, personally and as
Special Administrator of the
Estate of Matthew W. Oleson, deceased,
Plaintiff-Appellant,†

v.

USAA Casualty Insurance Company, Defendant,

State Farm Mutual Automobile
Insurance Company,
Defendant-Respondent.

Court of Appeals

*No. 2005AP2443. Submitted on briefs March 3, 2006.
—Decided June 29, 2006.*

2006 WI App 152

(Also reported in 720 N.W.2d 187.)

† Petition to review denied 9/11/06.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jerome A. Maeder* and *Benjamin C. Welch* of *Jerome A. Maeder, S.C.*, Wausau.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jacqueline R. Chada* of *Mueller Goss & Possi, S.C.*, Milwaukee.

Before Lundsten, P.J., Dykman and Higginbotham, JJ.

¶ 1. DYKMAN, J.   Melanie Bauer, personally, and as personal representative of the estate of Matthew W. Oleson, appeals from an order dismissing her complaint against State Farm Mutual Automobile Insurance Company.  The issue raised on summary judgment is whether the underinsured motorist (UIM) clause of her automobile policy with State Farm covered her son, Matthew Oleson, when he was killed while riding in an automobile driven by a friend. We conclude that Matthew did not "reside primarily with" Bauer and

482

therefore, under the unambiguous language of Bauer's policy, Matthew was not insured by Bauer's UIM coverage. We therefore affirm.

■

¶ 2. Summary judgment methodology is well known and we need not repeat it here. Our review is de novo, and is limited to the pleadings, and the parties' affidavits and other material. *Nielsen v. Spencer*, 2005 WI App 207, ¶ 9, 287 Wis. 2d 273, 704 N.W.2d 390. State Farm's affidavit included pertinent parts of Bauer's insurance policy, portions of her deposition, her response to State Farm's interrogatories and several documents. Bauer submitted her affidavit and the affidavit of her attorney, to which he attached Bauer's entire deposition, portions of her insurance policy with State Farm and her answers to State Farm's interrogatories. The parties do not assert a conflict in the documents. They disagree on the meaning of State Farm's UIM coverage.

¶ 3. Matthew lived with his mother from birth through high school. He then enlisted in the Navy, and attended boot camp and advanced training from June through December 2001. He returned to his mother's home for three weeks' leave. He was then sent to his "home port" of Gulf Port, Mississippi, from where he was dispatched on several missions. For the first six months in Gulf Port, he lived on base. After that, he rented an apartment with a roommate. Between missions, when granted leave, he would return to his mother's home for two weeks' time. Matthew obtained a Mississippi fishing license and kept his motorcycle and personal items at his apartment. He maintained a Wisconsin operator's permit and a Wisconsin bank account, to which his pay checks were deposited. His

motorcycle was licensed in Wisconsin. His income tax return listed his mother's home as his home address. His mother kept a room in her home for his use, and Matthew stored bows, guns and clothing there. He planned on returning to Wisconsin after his five-year Navy enlistment. He was killed in an automobile accident in Wisconsin on May 9, 2004, while riding with an underinsured driver.

¶ 4. Melanie Bauer's UIM clause in her policy with State Farm defines the persons insured by UIM vehicle coverage as: (1) the first person named in the declarations; (2) his or her spouse, and (3) their relatives. The policy's definition of a "relative" is "a person related to you or your spouse by blood, marriage or adoption who resides primarily with you. It includes your unmarried and unemancipated child away at school." The parties' dispute concerns whether, for purposes of UIM coverage, Matthew "reside[d] primarily" with his mother, Melanie Bauer, at the time of his death.

■

¶ 5. Wisconsin cases have not interpreted the phrase "resides primarily with you." Bauer asserts that cases interpreting the word "resident" are relevant to our interpretation of this phrase. She relies on several of these cases, the first of which is *Doern v. Crawford*, 30 Wis. 2d 206, 210, 213, 140 N.W.2d 193 (1966), *overruled on other grounds, Belling v. Harn*, 65 Wis. 2d 108, 221 N.W.2d 888 (1974), which interpreted an insurance policy containing the phrase "resident of the same household." We are not convinced that this phrase and "resides primarily with you" are fungible. The word "primarily" focuses our analysis on where a person's primary residence is located. *Doern* held only that because there were competing inferences as to whether

the policyholder resided with the person asserting coverage, summary judgment was improperly granted. *Doern*, 30 Wis. 2d at 214. Even if we were to use the *Doern* test, which includes a requirement that "the absence from the family roof must be of a *temporary nature* . . .," we would conclude that Matthew's five-year enlistment in the Navy was not a temporary absence. *Id.* at 213 (emphasis added). Thus, Matthew's undisputed intent to return to Wisconsin after his Navy service would not carry the day even if coverage were governed by the *Doern* test.

¶ 6.   Bauer asks us to apply the test for whether a person was a "resident of the same household" that the court employed in *Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis. 2d 27, 36–37, 197 N.W.2d 783 (1972). There, the court concluded that:

> [A] determination as to whether a person is a resident or member of a household in the present context is dependent upon three factors: (1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon.

*Id.* (citation omitted).

¶ 7.   We have the same difficulty with *Pamperin* that we had with *Doern*. We are not interpreting the policy language the court interpreted in *Pamperin*. *Pamperin* concluded that the jury's finding as to residency was not supported by the evidence. The *Pamperin* three-factor test is: (1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be

substantial. Matthew received two-weeks' leave between assignments. His fatal accident occurred during one of those leaves. Even assuming that the accident occurred near the end of his leave, the time spent with Bauer, like the week to ten-day stay in *Pamperin*, was not substantial. Therefore, even if we used the *Pamperin* test, Bauer would not prevail.

¶ 8. Again assuming that the phrase "resident of the same household" has the same meaning as the phrase "resides primarily with you," Bauer argues that *Seichter v. McDonald*, 228 Wis. 2d 838, 844–45, 599 N.W.2d 71 (Ct. App. 1999), controls our decision here. *Seichter* reiterated the three-factor test of *Pamperin*, and also considered a five-factor test, noting that we cited this test with approval in *Ross v. Martini*, 204 Wis. 2d 354, 358, 555 N.W.2d 381 (Ct. App. 1996). But there is a difference in the two phrases. For instance, in *Londre v. Continental Western Ins. Co.*, 117 Wis. 2d 54, 58, 343 N.W.2d 128 (Ct. App. 1983), we noted: "We agree with jurisdictions concluding that a person may be a resident of more than one household for insurance purposes." That is not physically possible where the insurance policy description includes the word "primarily." One cannot primarily reside in two households at the same time.

¶ 9. There is another difference. The Bauer policy adds to the definition of "primarily resides with you" by including an additional category of insured persons. "[R]esides primarily with you . . . . includes your unmarried and unemancipated child away at school." Were it not for this sentence, unmarried and unemancipated children away from home at school would not be insured under their parents' UIM coverage because they would be primarily residing in a college dormitory or apartment and not at home.

486

¶ 10. Bauer asserts that the sentence in her policy extending coverage to students who do not primarily reside at a pertinent relative's home provides an *illustrative example* of situations where a person not primarily residing with a relative would still be an insured. We disagree. If the "student" sentence were an example only, there would be no need for the sentence in the first place. If, as Bauer argues, the test is not whether a person is living under a relative's roof, but whether some other sort of relationship has ended and the child has started a life without the relative, each case would have to be litigated to see whether this test is fulfilled. As we recognized in *Seichter*, "previous decisions of this court indicate that no one factor is controlling on the question of household membership but that all of the elements must combine to a greater or lesser degree in order to establish the relationship." *Seichter*, 228 Wis. 2d at 844 (citations omitted).

¶ 11. The cases Bauer relies on do not interpret an insurance policy which includes the word "primarily" or "primary." The modifier "primarily" makes the phrase "resides primarily with you" unambiguous, at least as applied to the facts of this case. MERRIAM WEBSTER's COLLEGIATE DICTIONARY 925 (10th ed. 1993) defines "primarily" as "for the most part," or "chiefly." One meaning it gives "primary" is "of first rank, importance or value," or "principal." *Id.* To have a "primary" residence under this commonly accepted definition means there can only be one primary residence. Because one cannot "primarily reside" in more than one place, the use of the modifier "primarily" avoids the uncertainties that were a cause of the disputes in *Doern, Pamperin, Seichter* and *Ross*.

¶ 12. The material facts and reasonable inferences from these facts are undisputed. This case is

therefore appropriate for summary judgment disposition. WIS. STAT. § 802.08(2) (2003–04). We conclude that Matthew did not primarily reside with his mother at the time of his death. Accordingly, the UIM clause of Bauer's policy with State Farm did not provide coverage for Matthew. We affirm the trial court's order granting summary judgment to State Farm.

*By the Court.*—Order affirmed.