# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 3, 2012

Lyle W. Cayce
Clerk

No. 11-20396

STATE FARM FIRE AND CASUALTY COMPANY,

Plaintiff–Appellee

v.

MATTHEW LANGE,

Defendant–Appellant

DAWN MORGAN; MARY ELIZABETH RUBIO, LINDA MILLER,
Individually and as Personal Representative of the Estate of Stephen Rubio,
Deceased,

Intervenors–Appellants

---

DAWN MORGAN, as Next Friend of K.R., a Minor; MARY ELIZABETH
RUBIO, as Next Friend of K.R., a Minor,

Plaintiffs–Appellants

v.

STATE FARM FIRE AND CASUALTY COMPANY

Defendant–Appellee

No. 11-20396

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-2011

Before JONES, Chief Judge, PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

This case arises from a dispute regarding coverage under a Personal Liability Umbrella Policy issued by Appellee State Farm Fire and Casualty Company ("State Farm"). The sole issue decided by the district court was whether Appellant Matthew Lange qualified as an "insured" under the policy, an issue that hinges upon whether Lange primarily resided with his parents, the policyholders. The district court determined that Lange's primary residence was an apartment, not his parents' home, and thus concluded that he did not qualify as an insured under the policy. The district court accordingly granted State Farm's motion for summary judgment. Lange and the Intervenors–Appellants appeal. For the reasons stated below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 5, 2009, Lange was the driver of an automobile involved in an accident in which two of Lange's passengers were killed. At the time of the accident, Lange's parents owned a Personal Liability Umbrella Policy insured by State Farm. Under the terms of the policy, State Farm agreed to provide a defense to the insured in the event of a lawsuit stemming from a covered loss and also agreed to pay any damages resulting from a covered loss. The policy defined "insured" to mean "you [the named insureds, Stephen and Marilyn

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20396

Lange] and your relatives whose primary residence is your household." The policy listed Lange's parents' address as being in Meyersville, Texas.

Lange had lived at the Meyersville address with his parents while attending grade school and high school. Lange graduated from high school in 2004, and at some time in 2005 he began working full time in Victoria, Texas, which is approximately 45 miles from Meyersville. In April 2005, Lange moved out of his parents' home and moved into an apartment with friends. In July 2005, Lange and some friends moved into a house on Gottfried Road in Victoria. Lange lived at this house until October 2007, when he moved into his own apartment in Victoria (the "Victoria apartment"). On the rental application for the Victoria apartment, Lange listed the house on Gottfried Road as his "current home address" and listed his father, Stephen Lange, as an emergency contact with whom he would not be living. Lange stated in his deposition that he moved to the Victoria apartment in order to be closer to work and to school, where he was taking night classes in pursuit of a welding certificate. The initial term of the lease on the Victoria apartment was six months. Lange twice extended the term of the lease, with the second extension set to expire on June 30, 2009.

The Victoria apartment was furnished with a bed, two couches, a television, and a plastic tool box used as a television stand, furnishings which Lange described as "basic things just to get by the day with." Lange slept in the Victoria apartment during the week, but on many weekends he returned to the Meyersville home. Lange stated that in any given month, he stayed at the Meyersville home at least two weekends, but often stayed there three weekends and sometimes as many as four. On these weekends, Lange typically arrived at the Meyersville home on Friday evening and returned to the Victoria apartment on Sunday evening, but occasionally he did not arrive in Meyersville until Saturday. Lange's childhood bedroom in the Meyersville home had been maintained as such, and he slept in his bedroom when he spent the weekends

3

there.    He kept what he characterized as his "prize possessions" in the Meyersville home: his firearms, good clothes, trophies, photographs, a four-wheeler vehicle, and his two dogs.  Lange explained that he kept these expensive items at the Meyersville home to protect them from being stolen.  Lange had a key to the Meyersville home and could come and go as he pleased and could make free use of the resources in the home.

Several documents identified the Victoria apartment as Lange's address. The utilities for the Victoria apartment were in Lange's name and the bills came to the apartment.  While living at the Victoria apartment, Lange purchased a truck, listing the Victoria apartment as his address on the sales contract and the certificate of title.  Lange filled out a credit application in connection with the purchase, listing the Victoria apartment as his current address and the Meyersville home as his previous address.  Lange financed the truck with a loan from Texas Dow Employees Credit Union.  He listed the Victoria apartment as his address on the loan application and the statements for the loan were mailed to the Victoria apartment.  Lange applied for a second loan from Texas Dow on January 21, 2009, again listing the Victoria apartment as his present address.

There were also several documents on which Lange listed the Meyersville home as his address.  Lange listed the Meyersville home as his address in the application for his own automobile liability insurance with State Farm, the vehicle registration for his four-wheeler, and his tax returns.  He was registered to vote in Meyersville.  His credit card statements, cell phone bills, and 401(k) statements were all sent to the Meyersville home.  Lange explained that he had most of his important bills and paperwork mailed to the Meyersville home because he "never checked [his] mail" at the Victoria apartment and his parents would tell him when important mail came.  The Meyersville home was also listed as his address on his driver's license, though this license was issued when Lange

was sixteen (and living in the Meyersville home full time) and was not renewed before the accident in February 2009.

After the accident, Lange was interviewed by Diana Osterhout, a State Farm employee. Lange told her that on the date of the accident he lived at the Victoria apartment and had been living there for about a year. In response to her question as to whether he considered the move to the Victoria apartment temporary or permanent, Lange stated that he considered it temporary because he was "planning on . . . settling down in a house but . . . wound up staying [in the Victoria apartment] a little bit longer than [he] thought [he] was going to." When she asked Lange whether he considered himself to be residing mainly in the Victoria apartment or in the Meyersville home, Lange responded "both." Lange also signed a statement saying: "At the time of the motor vehicle accident on February 5, 2009, my primary residence was my apartment in Victoria, Texas." However, in his deposition taken over a year later, Lange stated that if he had been asked at the time of the accident, he would have said that his "primary residence was the Meyersville address and the apartment was temporary."

Osterhout also interviewed Lange's mother, who said that she considered Lange to have been residing at the Victoria apartment on the date of his accident. Lange's mother also said that she considered his move to the Victoria apartment to be a permanent move and that she did not consider him to be a resident of her home on the date of the accident. Lange's father stated in his deposition that he would have said Lange was living at the Victoria apartment if he had been asked on the date of the accident. Lange's father also said, however, that he considered the Victoria apartment to be a temporary address for Lange and considered the Meyersville home to be Lange's permanent residence.

No. 11-20396

After investigating the facts surrounding the accident, State Farm filed suit against Lange, seeking a declaration that Lange's primary residence at the time of the accident was the Victoria apartment and that therefore he did not qualify as an "insured" under the policy.  The families of the two passengers killed in Lange's accident intervened in the suit, aligned in interest with Lange.  State Farm and the Intervenors filed cross-motions for summary judgment.  The district court concluded that Lange's primary residence was the Victoria apartment and that he was not an insured under the policy, and therefore granted summary judgment in favor of State Farm and denied the Intervenors' motion.  Lange and the Intervenors timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. § 1332.  This court has jurisdiction pursuant to 28 U.S.C. § 1291.  "We review a district court's grant of summary judgment *de novo*, applying the same legal standards that the district court applied, and we view the evidence in the light most favorable to the nonmoving party."  *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In a diversity case, "[o]ur primary obligation is to make an *Erie* guess as to how the Texas Supreme Court would decide the question before us."  *Gilbane*, 664 F.3d at 593.  In making an *Erie* guess, we look to "decisions and dicta of the Texas Supreme Court" as well as "decisions of the intermediate appellate courts in determining how the Texas Supreme Court would decide the issue."  *Id.* at 594.

## III. DISCUSSION

Texas courts construe insurance policies using the same rules of construction applicable to contracts generally.  *Pendergest-Holt v. Certain*

No. 11-20396

*Underwriters at Lloyd's of London*, 600 F.3d 562, 569 (5th Cir. 2010) (citing *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008)). Whether contractual terms are ambiguous is determined as a matter of law. *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 768 (5th Cir. 1995) (citing *Yancey v. Floyd W. & Co.*, 755 S.W.2d 914, 918 (Tex. App.—Fort Worth 1988, writ denied)). "If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Am. Home Assurance Co. v. Cat Tech LLC*, 660 F.3d 216, 220 (5th Cir. 2011) (per curiam) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010) (internal quotation mark omitted)).

The term "primary residence" is not defined in the policy. The parties have not identified nor have we found any Texas case interpreting the phrase "primary residence" in the insurance context. The district court determined that "primary residence" was unambiguous as a matter of law and relied upon several dictionaries to determine its plain meaning. Neither party argues that the term is ambiguous and neither party argues that the district court erred in determining its meaning.

We agree with the district court that the Texas Supreme Court would conclude that the phrase "primary residence" is unambiguous. Several state courts have found similar phrases to be unambiguous. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Harris*, 882 So. 2d 849, 853–54 (Ala. 2003) (holding that the phrase "lives primarily with you" is unambiguous); *Wallace v. State Farm Mut. Ins. Co.*, No. F-07-012, 2007 WL 4216132, at *3 (Ohio App. Nov. 30, 2007) (holding that "insurance policy language limiting . . . coverage to only those persons who 'primarily reside with you' [is] unambiguous"); *Bauer v. USAA Cas. Ins. Co.*, 720 N.W.2d 187, 190 (Wis. App. 2006) ("The modifier 'primarily' makes the phrase 'resides primarily with you' unambiguous . . . ."). We believe that the Texas Supreme Court would reason similarly to these other state courts and

would conclude that "primary residence" is unambiguous. "Primary" means "first or highest in rank or importance," "chief," or "principal." *Random House Webster's Unabridged Dictionary* 1537 (2d ed. 2001); *cf. Harris Cnty. Appraisal Dist. v. Wilkinson*, 317 S.W.3d 763, 767 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (relying upon dictionary to determine common meaning of "principal residence"). We thus agree with the district court that a primary residence is one's chief, principal, and most important residence.

"Under Texas law, . . . interpreting an unambiguous contract [is a] question[] of law." *Interstate Contracting Corp. v. City of Dall., Tex.*, 407 F.3d 708, 712 (5th Cir. 2005). When the terms of a contract are unambiguous and the facts underlying a contract claim are undisputed, whether coverage exists under the contract is a question of law. *Fidelity & Cas. Co. of N.Y. v. Lott*, 273 F.2d 500, 502 (5th Cir. 1960); *cf. Hernandez v. LaBella*, No. 14-08-00327, 2010 WL 431253, at *3 (Tex. App.—Houston [14th Dist.] Feb. 9, 2010, no pet. h.). Although Lange argues that genuine issues of material fact exist, he has failed to identify any material disputed fact. Because the term "primary residence" is unambiguous and the facts material to this issue are not in dispute, coverage under the policy may be decided as a matter of law. *See also Wilkinson*, 317 S.W.3d at 767 (concluding, in the context of a homestead tax exemption, that "the facts found by the district court do not support *a legal conclusion* that the mobile home ever was the [plaintiffs'] main or primary residence" (emphasis added)).

Taking all of the uncontroverted evidence into account and viewing that evidence in the light most favorable to Lange, we agree with the district court that the Victoria apartment was Lange's primary residence. At the time of his accident, Lange was an adult who had graduated from high school almost five years beforehand and had moved out of his parents' home almost four years beforehand. Lange worked full time and lived in an apartment 45 miles away

from his parents' home, and he slept in this apartment the majority of evenings. While Lange stresses that he returned to his parents' home on the weekends, he testified that he generally spent one weekend a month at the Victoria apartment, and occasionally he would spend two weekends in a month at his apartment. Based upon the time spent in each location, the nature of Lange's weekends at the Meyersville home appears to be that of a frequent guest rather than someone who was principally residing there. Although Lange kept several important possessions at the Meyersville home, he did this out of a fear that the items would be stolen. That he stored prized items for protection in his parents' home does little to support the conclusion that he primarily lived with his parents.

There is evidence, both in the nature of documents bearing Lange's address and in statements made by Lange and his parents, supporting each location as Lange's primary residence. Nevertheless, viewing all of this evidence in the light most favorable to Lange, it is insufficient to overcome the other objective evidence indicating that the Victoria apartment was Lange's primary residence.

## IV. CONCLUSION

The term "primary residence" is unambiguous and it means one's principal, chief, or most important residence. Based on all of the evidence presented, we conclude that Lange's primary residence was the Victoria apartment. Because Lange did not primarily reside in his parents' Meyersville home, he is not an "insured" under their policy, and summary judgment for State Farm was proper. AFFIRMED.