839 So.2d 897 (2003)
Scott DWELLE, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
No. 1D02-1683.
District Court of Appeal of Florida, First District.
March 13, 2003.
*898 Virginia M. Buchanan of Levin, Papantonio, Thomas, Mitchell, Ecshner & Proctor, P.A., and Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola, for Appellant.
Michael D. Hook of Hook, Bolton, Mitchell, Kirkland & McGhee, Pensacola, for Appellee.
ERVIN, J.
This is an appeal from a final declaratory judgment determining that appellant, Scott Dwelle, was not a resident relative of his parents' household for the purpose of his entitlement to uninsured motorist (UM) benefits. Because we conclude he was a resident relative, we reverse and remand with directions that judgment be entered for appellant.
This appeal arises from a suit filed by appellee, State Farm Mutual Insurance Company, relating to UM coverage extended by two contracts of automobile liability insurance that State Farm had provided to Dwelle's parents. These two contracts were in force on September 23, 2000, when Dwelle was injured in a collision with another vehicle driven by an intoxicated uninsured motorist. The accident occurred approximately six hours after Dwelle's marriage to Lori Dwelle, who was killed in the accident, while the two were en route to their honeymoon destination. After Dwelle had made demand for UM benefits provided under his parents' policies, State Farm sought a declaratory judgment declaring Dwelle was not a "relative" of his parents' household as defined in the policies, because at the time of the accident he was not "a person related to [them] ... who resided primarily with [them]." Both Dwelle and State Farm filed motions for summary judgment. In granting summary judgment in favor of State Farm, the trial court agreed with its primary argument that Dwelle did not meet the policies' definition of relative because he was a resident of his own separate household, as shown by his sworn statement of January 11, 2001, disclosing that upon his return from his honeymoon, he intended to share an apartment in Alabama leased by his wife.
Because we are reviewing the propriety of the grant of summary judgment, our review standard is de novo. Therefore, we are not obliged to defer to the trial court's findings in that we apply the same standard as that imposed by the trial court, meaning that summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
In entering judgment for State Farm, we conclude that the lower court too narrowly focused on Dwelle's statement of where he intended to reside in the future, and not upon other salient facts. All of the relevant facts must be taken *899 into consideration for the purpose of establishing the following three aspects of household or residency under an insurance policy: (1) close ties of kinship, (2) fixed dwelling unit, and (3) enjoyment of all the living facilities. Row v. United Servs. Auto. Ass'n, 474 So.2d 348, 349 (Fla. 1st DCA 1985); Gen. Guar. Ins. Co. v. Broxsie, 239 So.2d 595, 597 (Fla. 1st DCA 1970).
Applying these three elements to the facts at bar, it is obvious that the first is easily established. Appellant is the biological son of the named insureds in the two policies. Likewise, the third element is indisputably borne out in that Dwelle at all times maintained a key to his parents' residence and enjoyed the use of his room, as well as the entire house and all the utilities. He was also able to drive any of the family's four vehicles. It is the second element that is in question in this case, because Dwelle stayed at places other than his parents' home from time to time.
The determination of whether the second aspect has been satisfied turns on the application of two alternative theories: (1) that Dwelle was a relative living primarily with his insured parents at the time of the accident, and (2) that he maintained his residency at his parents' household as a dependent child living away from home while attending school. In our judgment, either of these two theories, when applied to the pertinent facts, adequately demonstrate that Dwelle, at the time of the accident, maintained his residency at his parents' fixed dwelling.
Dwelle testified that he had grown up in his parents' home in Pensacola. After graduating from high school, he attended Pensacola Junior College for two years while continuing to live at home. Thereafter, he attended the University of South Alabama and lived on campus in a dormitory. At the time of his January 2001 statement, he had been continuously enrolled at South Alabama and expected to graduate in May 2001. In May 2000, before the accident, he was required to move out of the dormitory due to renovations, so he returned home and lived with his parents, driving back and forth from Pensacola to Mobile for part-time schooling and work during the summer of 2000. Most of his personal belongings were in his parents' home and remained there at the time of the accident. Dwelle's future spouse, Lori, also moved from the dormitory in May 2000, and took out a one-year lease on an apartment in nearby Daphne, Alabama, where she intended to reside while working in Theodore, Alabama, and finishing graduate school.
After Lori obtained the apartment, Dwelle stayed there periodically, but also spent several nights a week and weekends at his parents' home. Two-and-a-half weeks before the September 23 wedding, Dwelle procured a part-time job with the City of Mobile, giving Pensacola as his permanent address. He testified that he planned to move into the apartment in Daphne after the honeymoon. Nevertheless, because the couple had no fixed plan of where to live, Dwelle believed they would probably return to Pensacola, where both had been raised. Living with either set of parents was an option open to them. Dwelle testified that he was still financially dependent on his parents at the time of the accident, as was Lori on hers. His parents paid the expenses for his school, dormitory, food, and car, and they would continue to pay his expenses after the marriage until the couple could become financially independent. He worked only 20 hours a week and "made hardly nothing." He was listed as a dependent on his parents' tax return, used his parents' home as his legal address, was registered to vote in Florida, and was a member of a church in Pensacola.
*900 In our judgment, the second criterion  that Dwelle was living primarily in his insured parents' fixed dwelling  has clearly been met. Despite what Dwelle may have indicated to be his intention of where he would reside in the future, the fact remains that he had not commenced living in the apartment on a permanent basis at the time of the tragic accident. Nor had he abandoned his residency at his parents' home. Compare these facts with those in Seitlin & Co. v. Phoenix Insurance Co., 650 So.2d 624, 626 (Fla. 3d DCA 1994), wherein the son intended to obtain employment and set up a household entirely independent from his parents upon the completion of his studies, but the court found his "future intention did not detract from the fact that, at the time of the tort incident, Schandler [the son] was properly viewed as being resident in the parents' household."
The alternative second theory, i.e., the maintenance of Dwelle's status as a dependent child while attending school away from home, further reinforces our conclusion that Dwelle remained a relative in his parents' home as of the time of the accident. As stated, Dwelle clearly established his continued financial dependence on his parents even after he had moved from the campus of South Alabama and obtained part-time employment with the City of Mobile, which was only temporary, in that he intended to obtain his undergraduate degree the following year.
In our judgment, the above facts are quite similar to those in General Guaranty Insurance Co. v. Broxsie, 239 So.2d 595 (Fla. 1st DCA 1970), disclosing that a minor had resided with her aunt for several years in Monticello, Florida, and thereafter rented a room in nearby Thomasville, Georgia, to attend vocational school. She graduated from school two days before the accident that was the subject of the automobile liability insurance claim. The insurer contended that the niece was not insured under the aunt's policy, because she was not a resident of her aunt's household. The trial court disagreed, and this court affirmed the finding that she was insured under the policy. In so doing, both the trial and appellate courts found the three elements of residency established, i.e., close ties of kinship, fixed dwelling, and enjoyment of the entire living facility. Although this court noted that the niece would be accepting employment at a hospital in Thomasville following her graduation, it nonetheless concluded that it "would not be until after plaintiff entered upon the full-time duties of her new employment at the hospital in Thomasville with the intention of establishing a new permanent residence there that she will be considered to have abandoned her prior residence in the home of her aunt in Monticello." Id. at 598.
We are not unaware that in both Broxsie and Seitlin, the appellate courts affirmed the trial courts' findings of residency, while we have stated our intention to reverse the lower court's finding of non-residency. As applied to the issue before us, this is an immaterial distinction. A similar issue was raised in Becklin v. Travelers Indemnity Co., 263 So.2d 629 (Fla. 1st DCA 1972), in which the facts disclose that while an insured mother's married son was between semesters at different universities, a fire destroyed certain personal property belonging to him during a visit at his mother-in-law's home. He sought coverage under his mother's homeowners' policy under the theory that he was a resident of his mother's household. In reversing the trial court's contrary ruling, this court found that the son had demonstrated the three elements of residency. The evidence showed that everyone, including his wife, considered him a member of his mother's household, because, among other things, he used his mother's address for all his *901 legal documents; he kept his personal belongings, maintained a phone, and received his mail there; and he was solely supported by his parents and never held a job. In reversing the trial court's judgment for the insurer, this court stated:
We are not unmindful of the rule that an appellate court will not reweigh the evidence and substitute its findings of fact for the findings of the trier of fact in the lower court. However, where the trial court has misconceived the legal effect of the facts, the appellate court is required to take cognizance thereof.
Becklin, 263 So.2d at 630 (citations omitted). See also Row v. United Servs. Auto. Ass'n, 474 So.2d 348, 349 (Fla. 1st DCA 1985); Trezza v. State Farm Mut. Auto. Ins. Co., 519 So.2d 649, 650 (Fla. 2d DCA 1988) (both stating that residency is a mixed question of law and fact that must be determined based upon the facts in each case, but that when the facts are undisputed, the question of whether the facts fit within a policy definition is a question of law that may be decided on appellate review).
We have considered the case that State Farm primarily relies on, Whitten v. Allstate Insurance Co., 476 So.2d 794 (Fla. 1st DCA 1985), which, in affirming summary judgment for the insurer, determined that there was a complete lack of evidence that the insureds' injured son had any intention to live with them as of the time of his accident. The facts in Whitten are clearly distinguishable from those before us in that Whitten had maintained employment and a residence with his wife for a number of years in another state, he returned to his parents' home in Florida after he had been laid off from work and paid them for room and board during the temporary time he remained in their home, and it was while living with them that he suffered his injuries. Unlike the present case, Whitten was not a student, and there is no suggestion in the opinion that he was dependent upon his parents for his support.
We therefore conclude, after applying the de novo review standard to the issue before us, that the lower court erroneously relied on Dwelle's statement of future residency intent in deciding he was not entitled to UM benefits under his parents' policies. The facts pertinent to the policy definition of relative living primarily with the insureds clearly establish appellant's status as such.
The declaratory judgment entered for the insurer is REVERSED and the cause is REMANDED with directions for judgment to be entered for appellant.
WOLF and VAN NORTWICK, JJ., concur.