2015 IL App (1st) 140447
No. 1-14-0447
Opinion filed March 27, 2015

FIFTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2011 CH 31467 |
| | ) | |
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) | The Honorable Thomas R. Allen, Judge, presiding. |
| Defendant-Appellee | ) | |
| | ) | |
| (State Farm Fire and Casualty Company, Plaintiff; | ) ) | |
| | ) | |
| Andrew Toig, Randall M. Toig and Teri E. Zenner, Defendants). | ) ) ) | |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    On this direct appeal, plaintiff State Farm Mutual Automobile Insurance Company (State Farm) appeals the trial court's grant of summary judgment in favor of defendant Progressive Northern Insurance Company (Progressive).

¶ 2    Plaintiff State Farm brought a declaratory judgment action seeking a declaration that its underinsured motorist coverage did not cover Andrew Toig (Andrew) for injuries he sustained in an automobile accident while a student at Colorado College. Andrew had sought coverage pursuant to the State Farm auto policies held by his father, Randall Toig, and stepmother, Teri Zenner (collectively, the Toigs), and pursuant to a single Progressive policy held by Andrew's mother, Allison Wines. The principal question before the trial court and now before this court is whether Andrew is a "relative," as defined by the State Farm policies.

¶ 3    For the following reasons, we affirm.

¶ 4    BACKGROUND

¶ 5    I. The Policies

¶ 6    Plaintiff State Farm provided three automobile insurance policies to the Toigs: two to the father and one to the stepmother. The question is whether these automobile policies provide underinsured motorist coverage to Andrew.

The parties agree that Andrew is covered if he is a "relative," as defined by the State Farm auto policies:

> "*Relative*–means a *person* related to *you* or *your spouse* by blood, marriage or adoption who resides primarily with *you*. It includes *your* unmarried and unemancipated child away at school." (Emphases in original.)

State Farm does not challenge coverage under any other provision of its policies.

¶ 7 There is no dispute among the parties: that the term "relative" specifically includes a "child away at school," and specifically excludes married and emancipated children, and that Andrew was at school and was not married or emancipated at the time of the accident.

¶ 8 State Farm Fire & Casualty Company (State Farm Fire) also provided the Toigs with two personal liability umbrella policies. However, these umbrella policies did not include underinsured motorist coverage, and the trial court ruled that these umbrella policies did not apply. No one has appealed this ruling, so these policies are not at issue on appeal.

¶ 9 Defendant Progressive provided an automobile insurance policy to Allison Wines, Andrew's mother. However, Progressive does not dispute coverage on appeal, so that policy is also not before us.

¶ 10                                   II. Undisputed Facts

¶ 11         In the case below, both State Farm and Progressive filed motions for

summary judgment, thereby acknowledging that there were no material issues

of fact preventing a grant of summary judgment. *Gaudina v. State Farm Mutual*

*Automobile Insurance Co.*, 2014 IL App (1st) 131264, ¶ 16 (where both parties

file cross-motions for summary judgment, they concede the absence of a

genuine issue of material fact and invite the court to decide the question as a

matter of law); 735 ILCS 5/2-1005(c) (West 2012) (a party seeking summary

judgment must show "that there is no genuine issue as to any material fact").

Thus, on appeal, neither party argues that there was a material issue of fact

which barred the trial court's entry of summary judgment.  Both parties agree

that the question before us on appeal is purely a question of law and that it

involves solely the application of law to undisputed facts.

¶ 12         The trial court summarized the undisputed facts as follows:

         "Andrew is related to his father by blood and stepmother by marriage.

         The undisputed facts of this case indicate that Andrew was unmarried,

         unemancipated, and living in a campus-owned apartment in Colorado at

         the time of the accident. Andrew considers both his father's and mother's

         homes to be his residences, and when he returned to Chicago during

         vacations and holidays he attempted to split his time between the

households on a '50-50' basis. He came and went from both households as he pleased; he had keys to both houses and kept possessions at both locations. The facts show that Andrew used his father's address for school billing records as well as for his health care and health insurance."

*State Farm Mutual Automobile Insurance Co. v. Toig*, No. 2011 CH 31467, slip op. at 2 (Cir. Ct. Cook Co. Sept. 30, 2013).

¶ 13    Neither party has argued on appeal that the trial court's above recitation of facts was incorrect.

¶ 14                                   III. Procedural History

¶ 15    One issue on appeal is whether forfeiture applies to several claims now raised by appellant State Farm. We therefore describe in detail the procedural history.

¶ 16    On September 7, 2011, plaintiffs State Farm and State Farm Fire filed a declaratory judgment action in the trial court. The complaint stated, upon information and belief, that defendant Progressive "has or will claim" that the Toigs' State Farm and State Farm Fire policies provide underinsured motor vehicle coverage on a *pro rata* basis with the coverage provided by Progressive.

¶ 17    Count I, which was brought solely by State Farm, alleged that the auto policies did not provide coverage to Andrew for the sole reason that "he did not reside primarily with" the Toigs.

¶ 18        Count II, which was brought solely by State Farm Fire, alleged that its personal liability umbrella policy did not provide coverage to Andrew because the policy "did not include motor vehicle coverage."  As already stated above, this count is not at issue on this appeal.

¶ 19        On November 14, 2011, Progressive filed an answer and also a counterclaim for a declaratory judgment that the three State Farm auto policies[1] and the one Progressive policy shared coverage for the accident "on an equal basis" or "25 percent each."  In its counterclaim, Progressive also alleged that the total amount of coverage allowed Andrew from all policies was $500,000 because that was the highest amount of any one policy, and that the $40,000 paid by the tortfeasor's insurance must be subtracted from the $500,000, leaving Andrew with a maximum of $460,000 that he could collect from both State Farm and Progressive.

¶ 20        On January 13, 2012, State Farm filed an answer to Progressive's counterclaim.  In its answer, it "[a]dmit[ted]" Progressive's allegations that the State Farm auto policies define the word "relative" to mean a person related to the named insured or the named insured's spouse by blood, marriage or adoption who resides primarily with the named insured, and that the "policies

---

[1] State Farm issued two auto policies to the father and one to the stepmother.

also define 'relative' to include the named insured's unmarried and unemancipated child away at school."

¶ 21    On September 20, 2012, State Farm and State Farm Fire filed an amended complaint which added allegations relating only to State Farm Fire. The amended complaint added count III which concerned a personal liability umbrella policy issued by State Farm Fire to Andrew's stepmother. The complaint also amended count II to add an allegation that Progressive "has or will claim" that the father's personal umbrella liability policy provides underinsured motorist coverage on a *pro rata* basis.

¶ 22    On November 21, 2012, State Farm and State Farm Fire filed a joint motion for summary judgment. The first claim was that State Farm Fire's personal umbrella liability policies do not provide underinsured motorist coverage. As stated before, this claim is not at issue on appeal.

¶ 23    The motion's next three claims concerned State Farm and claimed: (1) that the two separate lines of the policy's definition of "relative" must both apply for someone to be a relative, and that Andrew did not satisfy the first line, which required him to reside "primarily" with the Toigs, since he divided his residence equally between the Toigs and his mother; (2) that Andrew did not reside "primarily" with his parents in Chicago, because he registered to vote in Colorado; and (3) that, even if the State Farm auto policies covered Andrew, the

7

maximum amount of coverage available to him is $500,000, because its policies provide that the total available under all policies shall be the highest amount allowed by any one policy.[2]

¶ 24    In its motion, State Farm did not argue: (1) that Andrew failed to satisfy the second line of the "relative" definition; (2) that, if coverage applied, the three State Farm auto polices and the one Progressive policy should *not* share coverage for the accident on an equal basis or 25 % each, as Progressive had argued in its counterclaim; (3) that Andrew was excluded from coverage from his stepmother's policy because he was a child by marriage rather than a biological child; or (4) that the $40,000 recovered from the tortfeasor's insurer should be subtracted from the limits of *each* of the applicable policies rather than from the total.

¶ 25    On December 21, 2012, Progressive filed its response to State Farm's motion and also its own cross-motion for summary judgment.  Progressive's arguments were all directed to State Farm's auto insurance policies.

¶ 26    In its cross-motion, Progressive agreed with State Farm that the total amount of coverage allowed Andrew was $500,000 because that was the highest amount of any one policy, but it further argued that the $40,000 paid by

_____

[2] Progressive agreed with this point but added that the amount of $40,000 paid by the tortfeasor should be subtracted from it, thereby bringing the total available coverage down to $460,000.

the tortfeasor's insurance must be subtracted from the $500,000, leaving Andrew with a maximum of $460,000 that he could collect from both State Farm and Progressive.

¶ 27 In its cross-motion, Progressive argued, as it had in its counterclaim, that the three State Farm auto and the one Progressive policy provided coverage on an equal basis, or 25 %, with each policy providing coverage limited to $115,000, or 25 % of $460,000.

¶ 28 On February 22, 2013, the trial court struck the previously scheduled hearing date of February 28, 2013, and permitted State Farm to file a "Response/Reply to Progressive's Response and Cross Motion." In its reply to this document, Progressive observed that, while State Farm acknowledged in its response that the combined limit was $500,000, State Farm's reply does not mention the setoff for the $40,000 already paid by the tortfeasor's insurance, which reduced the combined limit to $460,000. Progressive stated: "No party has contested this position by motion, response or reply."

¶ 29 On May 8, 2013, the trial court set the hearing on State Farm's and Progressive's summary judgment motions for July 31, 2013.

¶ 30 On July 31, 2013, at the hearing, the trial court observed that it had "dueling cross motions for summary judgment" before it. The State Farm attorney asked the court if the court wanted to ask questions or if it preferred the

attorneys to proceed with their prepared argument, and the court indicated the latter. The State Farm attorney stated first, on behalf of State Farm Fire, "it is not contested in any of the briefs, that those [personal liability umbrella] policies do not provide underinsured motorist coverage."

¶ 31        Then, on behalf of State Farm, the attorney argued that the question was "whether or not Andrew Toig resided primarily with Randall Toig and Teri Zenner [Andrew's father and stepmother] on the date of the accident because the policy definition of 'relative' means a relative must reside primarily with the named insured."

¶ 32        State Farm also argued that "the most that Andrew Toig could ever recover under all applicable underinsured motorist coverage would be $500,000," which is also the amount of the Progressive policy. As a result, "the real dispute" was not between the Toigs and State Farm, but between State Farm and Progressive. State Farm observed: "This has really become a dispute as to whether State Farm should be sharing pro rata with Progressive on any payment made to Andrew Toig for his underinsured claim." State Farm's "response to that is State Farm doesn't provide coverage."

¶ 33        Progressive argued next and observed that "[t]here are four legal issues that have been presented to the Court" and "only one of those legal issues is

contested," and that is "whether or not Andrew Toig qualifies as an insured relative under his father's and his stepmother's policy."

¶ 34　　With respect to the contested issue, Progressive argued that State Farm had discussed only the first sentence of the "relative" definition. "But then there's a period, and there's a separate sentence," which defines the term "relative" to include the name insured's unmarried and unemancipated child away at school. "The reason" for that sentence is "that if you didn't allow for there to be coverage for a child away at school, you'd never have underinsured *** motorist coverage for that relative because when they're away at school, they can't be said to be primarily residing with" their parents.

¶ 35　　Progressive concluded by briefly noting the three uncontested issues: (1) that the limit for total coverage is $500,000; (2) that this amount is set off by $40,000, which is the amount paid by the tortfeasor's insurance, thereby bringing the limit for total coverage down to $460,000; (3) and that each of the four policies is responsible for 25 % of that $460,000, or $115,000. In its rebuttal argument, State Farm agreed with the first point, stating that if the State Farm polices apply, "the policies don't stack," and did not respond to the other two points.

¶ 36 The parties agreed to order the transcript, and the court stated that it took the matter under advisement in order to give this issue its "best shot." The court then set a status date for September 30, 2013.

¶ 37 IV. The Trial Court's Orders

¶ 38 On September 30, 2013, in a three-page memorandum order, the trial court granted summary judgment in favor of Progressive.

¶ 39 The personal liability umbrella policies issued by State Farm Fire were addressed by the trial court in a footnote on the first page: "As a preliminary matter, this Court finds it unnecessary to decide whether or not Andrew Toig would be covered under State Farm's 'umbrella' policies, as this decision is predicated on other grounds." As stated above, these policies are not an issue on appeal, and State Farm Fire is not an appellant.

¶ 40 The trial court stated the issue before it as: "whether Defendant Andrew Toig is an 'insured' as defined under the State Farm policies." The court held that it did not have to decide whether Andrew "primarily resides" in his father's home as provided by the first sentence of the "relative" definition, because "the second sentence must be read in the disjunctive" and the second sentence provided coverage for an "unmarried and unemancipated child away at school." The court ruled: "If this sentence were not in the disjunctive, then those

children would never be insured under their parents' policies, because the children would 'primarily' reside at school, not at home."

¶ 41    The trial court further held that "Andrew is eligible to receive a total of $460,000 from the four policies," namely, the one Progressive policy and the three State Farm auto policies, and that "the policies must share coverage on an equal basis," with each policy responsible for $115,000 in coverage.

¶ 42    On October 24, 2013, State Farm filed a motion for rehearing. The motion stated that it was made only by State Farm, not by State Farm Fire. State Farm argued for the first time: (1) that Andrew was not his stepmother's "child" under her insurance policy; (2) that the $40,000 received from the tortfeasor's insurer should be subtracted from *each* policy, when considering the applicable exposure for each policy; and (3) that the coverage should be prorated by each policy's limits, meaning that, *if* the stepmother's policy did not apply, then the coverage from the one Progressive policy was $204,454.61 and the coverage from the two State Farm auto policies issued to the father was only $109,772 each, for a total coverage of $460,000.

¶ 43    State Farm's motion for rehearing claimed that "[t]he briefing up to this time has concerned only the question of whether State Farm provides any underinsured motorist coverage at all, and not how the underinsured liability should be allocated among the applicable policies." Actually, Progressive

13

raised the issue in its counterclaim, in its cross-motion for summary judgment, in its reply brief and at the hearing on summary judgment; and State Farm did not respond, either in its briefs or at the hearing.

¶ 44　　　　In its reply, Progressive observed that:  "In its motion, State Farm argues for the first time:  (1) Andrew Toig is not covered by [stepmother] Teri Zenner's policy because he is her stepchild; and (2) the remaining three policies should share coverage on a pro-rata basis *** with the limits of each policy reduced by the amount of liability payments."  Progessive argued that State Farm waived these issues by failing to raise them, since the purpose of a motion to reconsider is only to bring to the court's attention: (1) newly discovered evidence; (2) changes in the law; or (3) claimed errors in the application of existing law.

¶ 45　　　　On February 5, 2014, the trial court heard argument on State Farm's motion for rehearing. State Farm argued that, since the trial court's September 30, 2013, order did not rule on State Farm Fire's umbrella policies, and did not contain Supreme Court Rule 304(a)[3] language, the order was not a final appealable judgment and could be changed at any time.  The court inquired, "So you're just bringing that argument up so that you can revisit this, right?", and State Farm responded:  "Yes."

---

[3] Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) requires a trial court to make a special finding in order to allow an appeal from a judgment that concerns fewer than all parties or claims.

¶ 46 Progressive observed: "Now, I think part of the problem may be the fact that on the copy of the order we got, on the first page, there's a footnote where I believe the Court was entering its ruling with respect to the umbrella policies and our copy was cut off on that footnote." The court confirmed: "There was something cut off, but – anyhow, somehow by the computer. But let's put the umbrella policies to bed anyhow." The court acknowledged: "I saw that it was cut off. I did see that. I apologize. The age of computers, right." The copy of the September 30, 2013, order in the appellate record contains a sentence of footnote 1, but it does not indicate what was cut off.

¶ 47 With respect to waiver, the trial court held that this argument was "a Mulligan," but it would not base its "decision on waiver":

"THE COURT: I get motions to consider all the time. It's automatic almost. So on the waiver issues, I err on the side of caution. I mean, I'm always – I shouldn't use the word happy to reread everything, but – which I did again and again today. I'm not going to suggest that that's the best way to do it. But in reality, this is a Mulligan. *** but I'm not going to, you know, make a decision based on waiver. I'm not going to do that."

¶ 48 The trial court ruled that the State Farm auto policy did not exclude stepchildren. When State Farm argued, "[s]tepchild and child are not the same thing," the court stated: "You'd better not tell any parents or stepparents that."

When State Farm responded, "there's a reason why we have two different words," the court stated: "Why don't they exclude stepchild in their policy? Why don't they say, caution, this does not include stepchild? You know that's not in the policy." The court concluded that "the policy is written by State Farm," and "State Farm should pay the price for having an ambiguous policy."

¶ 49    As for the proration issue, the trial court declined to alter its prior ruling on this issue, holding: "I'm sticking to my guns. The 500,000, take off the 40, that leaves you with 460, and everybody shares equally 115."

¶ 50    The trial court also stated that, "just for clarity," it would issue "a finding that those policies, those umbrella policies, don't apply." The court reiterated "that was a little miscue on our part, but I didn't catch it."

¶ 51    The trial court's handwritten order on February 5, 2014, stated in full:

"This cause coming to be heard on motion of State Farm for rehearing, due notice given and the court being fully advised in the premises:

It is hereby ordered that State Farm's motion for rehearing is denied. It is further ordered that State Farm is granted summary judgment with respect to the umbrella policies, the court declaring that State Farm [Fire's] umbrella policies do not provide underinsured motorist coverage for the occurrence of March 13, 2008."

¶ 52          On February 11, 2014, State Farm filed a notice of appeal stating that it appealed "from the order and judgment entered on September 30, 2013 and the order entered on February 5, 2014, granting summary judgment in favor of defendants-appellees." As quoted above, the February 5 order granted summary judgment in favor of plaintiff State Farm Fire, not in favor of defendants.

¶ 53                                ANALYSIS

¶ 54          On this direct appeal, State Farm claims that the trial court erred in granting summary judgment in favor of Progressive, because the State Farm auto policies issued to Andrew Toig's father and stepmother did not cover Andrew.

¶ 55          State Farm argues that its polices did not cover Andrew: (1) because he was not a child "away at school" as its policies provide, when he did not intend to return to his parents' home after graduation; (2) because its provisions for a child "who resides primarily with you" and a child "away at school" must be applied together, and Andrew did not reside primarily with the Toigs, since his parents were divorced and he also stayed with his mom when in Chicago; and (3) because Andrew did not qualify as "your" child under his stepmother's policy, where the policy defined the word "relative" to include "a person related to you or your spouse by blood, marriage or adoption."

¶ 56 State Farm also claims that, if Andrew is covered, then the trial court also erred: (1) in its calculation of the proration with the Progressive policy; and (2) by not subtracting the $40,000 recovered from the tortfeasor's insurer from each State Farm auto policy.

¶ 57 Progressive asks us to affirm the trial court's judgment, and also argues that State Farm forfeited the following legal theories by waiting to raise them until State Farm's motion for a rehearing: (1) that Andrew was excluded as a stepchild from being "your" child in his stepmother's policy; (2) that the State Farm auto and Progressive polices should share coverage on a prorata basis by comparing the liability amount of each policy to the total of all limits; and (3) that State Farm is entitled to a setoff of $40,000 paid by the liability insurers for each policy.

¶ 58 For the following reasons, we do not find State Farm's claims persuasive, and we affirm the trial court's grant of summary judgment in favor of Progressive.

¶ 59 I. Declaratory Judgment

¶ 60 This action was brought as a declaratory judgment action pursuant to section 2-701 of Code of Civil Procedure (735 ILCS 5/2-701 (West 2012)). This section permits a court in "cases of actual controversy" to "make binding declarations of rights *** including the determination, at the instance of anyone

interested in the controversy, of the construction of any \*\*\* contract \*\*\* and a declaration of the rights of the parties interested." 735 ILCS 5/2-701(a) (West 2012). The "[d]eclarations of rights, as herein provided for, may be obtained by means of a pleading seeking that relief alone, or as incident to or part of a complaint, counterclaim or other pleading seeking other relief as well." 735 ILCS 5/2-701(b) (West 2012). In the case at bar, plaintiffs sought solely a declaratory judgment; and the trial court issued a declaratory judgment, albeit not the one they were seeking.

¶ 61        Although this section specifically permits jury trials if there are issues of fact (735 ILCS 5/2-701(d) (West 2012)), the judgment here was issued without trial and upon motions for summary judgment.

¶ 62                              II. Standard of Review

¶ 63        In appeals from summary judgment rulings, we conduct a *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Outboard Marine*, 154 Ill. 2d at 102. Here, all parties agree there are no issues of material fact. In considering a motion for summary judgment, a court will review the pleadings, depositions, affidavits and admissions on file (735 ILCS 5/2-1005(c) (West 2012)), and will

construe the facts in these documents against the moving party. *Outboard Marine*, 154 Ill. 2d at 131-32.

¶ 64    The construction of an insurance policy's provisions is also a question of law, which we also review *de novo*. *Outboard Marine*, 154 Ill. 2d at 108.   To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole.  *Outboard Marine*, 154 Ill. 2d at 108. If the words in the policy are unambiguous, a court must afford them their plain and ordinary meaning.  *Outboard Marine*, 154 Ill. 2d at 108. However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy. *Outboard Marine*, 154 Ill. 2d at 108.

¶ 65                          III. Denial of Rehearing

¶ 66    In its notice of appeal, defendant State Farm indicated that it appealed not only the trial court's denial on September 30, 2013, of its summary judgment motion, but also the trial court's denial on February 5, 2014, of its motion for rehearing.

¶ 67    As we discussed above in the Background section, State Farm argued in its motion for rehearing: (1) that Andrew was not his stepmother's "child" under her insurance policy; (2) that the $40,000 received from the tortfeasor's insurer should be subtracted from *each* policy, when considering the applicable

exposure for each policy; and (3) that coverage should be prorated by each policy limit, meaning that, *if* the stepmother's policy did not apply, then the coverage from the one Progressive policy was $204,454.61 and the coverage from the two State Farm auto policies issued to the father would be only $109,772 each, for total coverage of $460,000. On appeal, Progressive argued forfeiture of these issues; and, in its appellate reply brief, State Farm did not deny that it failed to raise these claims in its summary judgment motion and that it raised these claims for the first time in its motion for a rehearing.

¶ 68        The purpose of a motion to reconsider is to bring to a court's attention: (1) newly discovered evidence; (2) changes in the law; or (3) errors in the court's previous application of existing law. *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 280 (2009); *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572 (2006); *Chelkova v. Southland Corp.*, 331 Ill. App. 3d 716, 729 (2002). A reconsideration motion is not the place to raise a new legal theory or factual argument. *River Plaza*, 389 Ill. App. 3d at 280; *North River*, 369 Ill. App. 3d at 572. " 'Trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather' " new evidence or legal theories to show the court that it erred in its ruling. (Internal quotation marks omitted.) *North River*, 369 Ill. App. 3d at 572 (quoting *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 65

(2001)). As a result, legal theories and factual arguments not previously made are considered waived. *River Plaza*, 389 Ill. App. 3d at 280; *North River*, 369 Ill. App. 3d at 572-73.

¶ 69 The decision to grant or deny a motion for reconsideration lies within the sound discretion of the trial court, and it will not be reversed on appeal absent an abuse of discretion. *North River*, 369 Ill. App. 3d at 572. An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable or where no reasonable person would take the view adopted by the trial court. *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 116.

¶ 70 In its appellate briefs, State Farm does not argue that the trial court abused its discretion in denying State Farm's motion for a rehearing, nor could it, in light of the fact that State Farm's rehearing motion was based on new legal claims that it raised for the first time in the motion.

¶ 71 Progressive had been raising the *pro rata* issue and the $40,000 issue consistently since the beginning of the lawsuit, and Progressive's arguments were met with silence by State Farm. First, on November 14, 2011, Progressive filed a counterclaim seeking a declaratory judgment that the three State Farm auto policies and the one Progressive policy shared coverage "on an equal basis" or "25 percent each." The counterclaim also alleged that the $40,000

paid by the tortfeasor should be subtracted only from the total coverage provided from all the policies.

¶ 72    Second, in its November 21, 2012, motion for summary judgment, State Farm did argue "even assuming *arguendo* [the] three State Farm *** automobile insurance policies provide underinsured motorist coverage to Andrew *** the maximum amount of coverage available to him is $500,000." Thus, both State Farm and Progressive were asking the trial court to consider the amount at issue, if the three State Farm policies were found applicable. However, State Farm chose not to also address in the alternative, if the three State Farm auto policies applied, how that coverage should be allocated or whether the $40,000 should be subtracted from each policy. State Farm chose to ignore both these issues, although they were specifically raised by Progressive in its counterclaim.

¶ 73    State Farm's summary judgment motion also chose *not* to argue for a lack of coverage under the stepmother's policy on the ground that Andrew was a stepchild.

¶ 74    Third, Progressive argued in its cross-motion for summary judgment, as it had in its counterclaim, both for a *pro rata* or 25% per policy allocation and for a subtraction of the $40,000 only from the total coverage. State Farm did not respond.

¶ 75    Fourth, at the hearing on the dueling motions for summary judgment, Progressive observed that "[t]here are four legal issues that have been presented to the Court" and "only one of those legal issues is contested." The one contested issue was whether Andrew was a "relative." Progressive listed the three uncontested issues as follows: (1) that the maximum total coverage was $500,000; (2) that the $40,000 paid by the tortfeaor reduced this amount to $460,000; and (3) that each of the four policies was responsible for an equal amount or 25%. State Farm agreed with the first point, but failed to make any response to the other two points.

¶ 76    Thus, State Farm failed to raise the stepchild argument at any time prior to the motion for rehearing, and it consistently failed to respond to Progressive's arguments about equal sharing and the $40,000, even though State Farm had plenty of opportunities to do so.

¶ 77    On appeal, State Farm argues that the "trial court did not find" that State Farm waived its arguments, and that we cannot overturn this *lack* of a finding absent an abuse of discretion. State Farm does not argue that the trial court *found* that State Farm did not waive its arguments, rather it argues that "the trial court did not find."

¶ 78 At the motion for rehearing, the trial court acknowledged State Farm's waiver of these issue, but stated that it would not "base[]" its decision to deny a rehearing on waiver.

¶ 79 In essence, State Farm is trying to have its newly raised claims reviewed under the lenient *de novo* standard used for summary judgment motions rather than the abuse-of-discretion standard applied to motions for rehearing. We will not allow this attempt to evade the proper standard of review.

¶ 80 The trial court denied State Farm's motion for rehearing. State Farm does not even attempt to argue that this was an abuse of discretion, nor can we find any. Thus, the trial court did not abuse its discretion in denying State Farm's motion for rehearing based on State Farm's newly advanced legal claims.

¶ 81     IV. First Line of the "Relative" Definition

¶ 82 State Farm's first claim in its summary judgment motion, which it repeats on appeal, is: (1) that a person must satisfy both lines of the "relative" definition to qualify as a "relative"; and (2) that Andrew did not qualify under the first line which required him to reside "primarily" with the Toigs, because he divided his time in Chicago equally between the Toigs and his mother. Since we do not find the first argument persuasive, we do not reach the second. *Crump v. State Farm Mutual Automobile Insurance Co.*, 961 F.2d 725, 727 (8th Cir. 1992) (since the child "was covered as a 'relative' under the second

25

sentence of the definition," it was "unnecessary" to consider whether he qualified under the first line).

¶ 83    State Farm's argument asks us to interpret the meaning of its policy. As we already observed, the construction of an insurance policy's provisions is a question of law, which we review *de novo*. *Outboard Marine*, 154 Ill. 2d at 108. If the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy. *Outboard Marine*, 154 Ill. 2d at 108-09.

¶ 84    As stated, the State Farm auto policies define the term "relative" with the following two lines:

"*Relative*–means a *person* related to *you* or *your spouse* by blood, marriage or adoption who resides primarily with *you*.  It includes *your* unmarried and unemancipated child away at school."   (Emphases in original.)

¶ 85    State Farm chose to use the vague pronoun "it" in the second sentence, instead of a particularized noun.  If the pronoun "it" refers back to the word "person," then the two lines are connected, with the second line expounding on the meaning of the word "person" in the first line.  However, if the word "it"

refers back to the word "relative," then each line is independently defining the term "relative."

¶ 86 A pronoun must agree with its antecedent in person, gender and number. See St. Cloud State University, Minnesota, Literacy Education Online, Pronoun-Antecedent Agreement, http://leo.stcloudstate.edu/grammar/pronante.html (last visited Mar. 17, 2015). A person can never be an "it." A person may be a "he" or a "she" but not an "it." See Richard Turner, The Grammar Curmudgeon, English 101 Help, Pronoun-Antecedent Agreement: Basics: Basic Rule, http://www.grammarmudge.cityslide.com/articles/article/2569239/35950.html (last visited Mar. 17, 2015) ("If the antecedent is a person who could be of either gender (e.g., teacher, doctor, student), we are obligated to use 'he or she,' 'him or her,' 'his or her,' as appropriate."). However, a term which is being defined is an "it." A term in a contract is neither a "he" or "she" but an "it." Thus, the only possible antecedent for "it" is the term being defined, which is "relative." At oral argument, State Farm agreed that " 'it' is a relative."

¶ 87 State Farm also conceded as much in its answer. Progressive set forth two independent definitions of the term "relative" in its counterclaim:

27

"6. The State Farm policies define 'relative' to mean a person related to the named insured or the named insured's spouse by blood, marriage or adoption who resides primarily with the named insured. [Citation.]

7. The State Farm policies *also define 'relative'* to include the named insured's unmarried and unemancipated child away at school." (Emphasis added.)

State Farm deemed both of these paragraphs "Admit[ted]" in its answer, thereby conceding the two definitions of "relative" in its policies.

¶ 88     In essence, State Farm is trying to interpret the first line to create an exception or an exclusion to the second. State Farm asks us to read the second line as stating that the term "relative" "includes your unmarried and unemancipated child away at school," but only if he or she "resides primarily with you."

¶ 89     As Progressive argued before the trial court and now before us, this interpretation could never be satisfied. If a child is "away at school," then he or she is not "resid[ing] primarily with you." Progressive argued that the only possible purpose of the second line was to cover a "child away at school, " who was then not "resid[ing] primarily with" the policy holder.

¶ 90     If the meaning of "resides primarily with *you*" (emphasis in original) was commonly understood to include children "away at school," then there would be

no need for the second line, and it would be superfluous. See *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436 (2010) ("Where a term in an insurance policy is not defined, we afford that term its plain, ordinary and popular meaning ***."); see also *Founders*, 237 Ill. 2d at 433 ("When construing the language of an insurance policy, we must assume that every provision was intended to serve a purpose.").

¶ 91 The trial court agreed with this argument, and so do we. Accord *Bauer v. USAA Casualty Insurance Co.*, 2006 WI App 152, ¶ 9, 295 Wis. 2d 481, 720 N.W. 2d 187 ("Were it not for this sentence, unmarried and unemancipated children away from home at school would not be insured under their parents' UIM coverage because they would be primarily residing in a college dormitory or apartment and not at home."); *Crump*, 961 F.2d at 727 ("The first sentence of the policy definition of 'relative' refers to family members living at home. The second sentence *provides a contrast:* 'relative' also includes children in school away from home." (Emphasis added.)).

¶ 92 Even if we did not agree with the trial court, we would have to find State Farm's choice to use the word "it" ambiguous, and ambiguities are construed against the drafter. *Outboard Marine*, 154 Ill. 2d at 122 (when the policy is ambiguous, it is construed against the drafter because, "[a]fter all, the insurer chose the words used in the policy"). Any ambiguous provision is construed

"strictly" against the drafter of the policy and in favor of coverage. *Outboard Marine*, 154 Ill. 2d at 119. "This is so because there is little or no bargaining involved in the insurance contracting process [citation], the insurer has control in the drafting process, and the policy's overall purpose is to provide coverage to the insured [citation]." *Outboard Marine*, 154 Ill. 2d at 119. Our supreme court explained the reasoning behind this rule of construction, as follows:

"The insurance industry is powerful and closely knit. *** [M]ost policies are standard-form, are worded very similarly [citation], and are offered on a take-it-or-leave-it basis [citation]. Any insured, whether large and sophisticated or not, must enter into a contract with the insurer which is written according to the insurer's pleasure by the insurer. [Citation.] Generally, since little or no negotiation occurs in this process, the insurer has total control of the terms and the drafting of the contract. [Citation.] This rule of construction recognizes *** these facets of the insurance contracting process. [Citation.] *** After all, the insurer chose the words used in the policy. [Citation.]" *Outboard Marine*, 154 Ill. 2d at 121-22.

¶ 93    State Farm argues that its interpretation is reasonable. "However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured and against the insurer who drafted the policy [citations]." *Outboard Marine*, 154

30

Ill. 2d at 108-09. See also *State Farm Mutual Automobile Insurance Co. v. Differding*, 46 Ill. App. 3d 15, 19 (1977) ("Insurers write the policies and if the language of the contract has a dual interpretation they must be charged with the ambiguity.").

¶ 94      State Farm argues that its definition is not ambiguous, although the majority of courts cited by the parties disagree with State Farm's interpretation that compliance with both lines of the definition is required. *Drake v. Snider*, 608 S.E.2d 191, 196 (W. Va. 2004) (*per curiam*) (although the child did not qualify under the first line of State Farm's "relative" definition since she resided primarily with the other parent, coverage applied because she was away at school); *Dwelle v. State Farm Mutual Automobile Insurance Co.*, 839 So. 2d 897, 900 (Fla. Dist. Ct. App. 2003) (under an "alternative second theory," even if the child was not a resident of his parents' home, he was covered as a child away at school); *Crump*, 961 F.2d at 727 (since the child "was covered as a 'relative' under the second sentence of the definition," it was unnecessary to consider whether the first line also applied); *State Farm Mutual Automobile Insurance Co. v. Taussig*, 227 Ill. App. 3d 913, 917 (1992) (appellate court analyzed the two lines as independent and "alternate" sources of coverage).

¶ 95      In support of its claim that its two-line definition of "relative" is not ambiguous and that both lines must apply, State Farm relies primarily on the

Alabama case of *State Farm Mutual Automobile Insurance Co. v. Brown,* 26 So. 3d 1167 (Ala. 2009), a short *per curiam* order. As we explain below, *Brown* does not support State Farm's argument.

¶ 96        State Farm's definition of "relative" in *Brown* is similar but not identical to the definition here. The "relative" definition in *Brown* stated: " 'Relative– means a person related to you or your spouse  by blood, marriage or adoption *who lives primarily with you.*  It includes your unmarried and unemancipated child *away at school.*' "   (Emphases in original.)[4] *Brown*, 26 So. 3d at 1169. The definition in *Brown* used the term "lives" rather than the term "resides."

¶ 97        Although the definitions are similar, the issue in *Brown* was different from the issue here.  In *Brown*, the question was whether a child, who lived at home with her mother and attended a local high school, was "away" at school. *Brown*, 26 So. 3d at 1168.  The certified question asked the supreme court to assume that the first sentence of State Farm's definition did not apply, so that coverage existed only if the child was considered "away." *Brown*, 26 So. 3d at 1169 n.1 (it was only "the second sentence [of the 'relative' definition] that is at issue here"). For purposes of that appeal, the court was asked to assume that the child "lives primarily" with her mother and did not live with her father, who was the policy holder. *Brown*, 26 So. 3d at 1170.  The short *per curiam* order

---

[4] The italics were added by the *Brown* court.  We do not mean to suggest that the italics were in the policy itself.

does not state whether the father also lived locally, but it does state that the child attended the "local high school" and the issue was the application of his insurance policy. *Brown*, 26 So. 3d at 1168.

¶ 98       The Alabama court held that the child could not be considered "away" if she was living at home and that, since the parties conceded that the first sentence did not apply, she could not qualify for coverage. *Brown*, 26 So. 3d at 1170. In *Brown*, State Farm argued that the two lines had to be read "conjunctively," in that the court had to determine first where the child's primary residence was, before it could determine whether she was "away" from it. *Brown*, 26 So. 3d at 1170. In contrast, the family argued that the two lines should be read "disjunctively," in that, as long as she was "away" from her father's house and in school, she was "away" at school. *Brown*, 26 So. 3d at 1170. The Alabama court agreed with State Farm that the word "away" had to be interpreted in conjunction or in light of the first sentence. *Brown*, 26 So. 3d at 1170.  Interpreting the second line in conjunction with the first line in *Brown*, the Alabama court reasoned that "away" had to mean that she was "away" from home.  *Brown*, 26 So. 3d at 1170. [5]

_____

[5] Another state supreme court disagreed with the *Brown* court's conclusion and held that when the child "left her father's home to attend a high school near her mother's home and to live with her mother," she was " 'away at school' " for the purpose of her father's policy. *Drake v. Snider*, 608 S.E. 2d 191, 196 (W.Va. 2004)

¶ 99    In this appeal, State Farm focuses on the *Brown* court's use of the word "conjunctively" to argue that the *Brown* opinion stands for the proposition that both lines of the definition must apply for there to be coverage.  But the opinion stands for just the opposite. If both lines had to apply for there to be coverage, then there would have been no need for the opinion at all, since the opinion started with the proposition that the first line *did not apply*.  To the extent that *Brown* has persuasive value, it supports Progressive's position not State Farm's.

¶ 100    State Farm also cites in support *Wallace v. State Farm Mutual Automobile Insurance Co.*, No. F-07-012, 2007 WL 4216132, at *4 (Ohio Ct. App. Nov. 30, 2007),[6] and argues:  "Had the Ohio Court of Appeals in *Wallace* believed the two sentence definition of relative must be read in the disjunctive, as Progressive argues, the court wasted its time and analysis in determining that the State Farm policy 'clearly and unambiguously established a mandatory requisite of proving residency to enable UIM coverage.' "  However, in *Wallace*, no argument was made that the teenaged child was away at school.

---

(*per curiam*); see also *Crump*, 961 F.2d at 727 (a child was still "away at school" although attending a local college).  However, this issue is not before us.

[6]Rule 3.4 of the Ohio Supreme Court Rules for the Reporting of Decisions (eff. July 1, 2012) permits all opinions of Ohio courts of appeals issued after May 1, 2002, such as *Wallace*, to be cited as legal authority and weighted as deemed appropriate by the courts without regard to whether the opinion was published or in what form.

As a result, the second line and the relationship between the two lines was not an issue and was not discussed.

¶ 101    As a housekeeping matter, we observe that both parties discuss at length a 2008 memorandum opinion from a Mississippi federal district court, but it is not reported, and we will not cite an unreported case. *Skokie Castings, Inc. v. Illinois Insurance Guaranty Fund*, 2012 IL App (1st) 111533, ¶ 15 ("an unreported case" is "not binding on any court"); *People v. Moore*, 243 Ill. App. 3d 583, 584 (1993) ("the decision was unreported and of no precedential value"). "Unreported decisions have no precedential value, and this is even more true for decisions from foreign jurisdictions." *American Family Mutual Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 38; *Burnette v. Stroger*, 389 Ill. App. 3d 321, 329 (2009); *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75, 82 (2002) (a "foreign, unreported decision" is "of no precedential value"). Specifically, with respect to unpublished federal cases, this court has held that they do not carry any authority before an Illinois court. *Lyons v. Ryan*, 324 Ill. App. 3d 1094, 1107 n.11 (2001) ("unreported federal court orders" are not "any kind of authority before an Illinois court"); *Sompolski v. Miller*, 239 Ill. App. 3d 1087, 1093 (1992) ("we decline" to follow "an unreported Federal district court decision").

¶ 102    In sum, for coverage to exist, a child who is away at school does not have to also prove that he or she primarily resides with the policy holder. First, State Farm's use of the word "it" rendered the "relative" definition ambiguous as to whether compliance with both lines is required, and any ambiguities must be construed against the drafter. Second, if compliance with both lines was required, the second line could never be satisfied, since a child cannot be both "away" at school while primarily residing with the policy holder. Third, the overwhelming majority of the precedent cited by the parties supports this conclusion. *Drake*, 608 S.E.2d at 196 (*per curiam*) (although the child did not qualify under the first line of State Farm's "relative" definition since she resided primarily with the other parent, coverage applied because she was away at school); *Dwelle*, 839 So. 2d at 900 (under an "alternative second theory," even if the child was not a resident of his parents' home, he was covered as a child away at school); *Crump*, 961 F.2d at 727 (since the child "was covered as a 'relative' under the second sentence of the definition," it was unnecessary to consider whether the first line also applied); *State Farm Mutual Automobile Insurance Co. v. Taussig*, 227 Ill. App. 3d 913, 917 (1992) (appellate court analyzed the two lines as independent and "alternate" sources of coverage); *Bauer*, 2006 WI App 152, ¶ 9, 295 Wis. 2d 481, 720 N.W.2d 187 ("Were it not for this sentence, unmarried and unemancipated children away from home at

school would not be insured under their parents' UIM coverage because they would be primarily residing in a college dormitory or apartment and not at home."); *Brown*, 26 So. 3d at 1168-69 (see discussion of case *supra* in text).

¶ 103                    V. Second Line:  "Away at School"

¶ 104    Next we consider the second line of the definition and whether Andrew was "away at school."

¶ 105    Before the trial court, State Farm did not offer arguments concerning whether Andrew was "away at school."  However, it did argue that, because he registered to vote in Colorado, he did not "reside primarily" with his parents in Chicago.  On appeal, State Farm has added that the voter registration is also a reason why he was not "away at school."  In other words, Colorado was his residence, so he was not "away."

¶ 106    The undisputed facts are that, while at school in Colorado, Andrew was "away" from his parents in Chicago, from the policy holder, and from where he lived before he left for school.  *Crump*, 961 F.2d at 727 (relying on the dictionary definition of "away" to interpret State Farm's "relative" definition, the court held that a child was "away" when " 'absent from' " his or her parents' home).

¶ 107    On appeal, State Farm points to the following facts to argue that Andrew was not "away":  (1) he attended boarding school outside of Illinois, starting at

age 16 and prior to attending college; and (2) he registered to vote in Colorado and had a Colorado driver's license. State Farm argues that Andrew lacked an intent to return to Chicago after graduation and, therefore, he was not "away" from it.

¶ 108     First, with respect to boarding school, the policy says "school" not "college" or "university." Interpreting the same "relative" definition at issue here, the *Drake* court observed that "the term 'school' was not defined by the policies" and thus the term was given its ordinary dictionary meaning. *Drake*, 608 S.E.2d at 195-96. As a result, the court held that the term "school," as used in the State Farm auto policy, includes "an elementary school, junior high school, high school, trade school, college and university." *Drake*, 608 S.E.2d at 196. Thus, when Andrew was at boarding school, he was "away at school" for purposes of the policy, and that continued when in college. The Eighth Circuit in *Crump* observed that neither the word "away" in the dictionary nor the word "away" in State Farm auto's policy "contain any time *** limitations." *Crump*, 961 F.2d at 727.

¶ 109     Second, State Farm argues that Andrew lost coverage when he registered to vote in Colorado and obtained a Colorado driver's license because he did not have an intent to return to Chicago. However, the policy says none of this. It specifically excludes emancipated and married children but it does not state that

it also excludes children who obtain voter registration or driver's licenses while away. When construing an insurance policy, a court tries to give effect to the intent of the parties at the time the policy was issued. *Founders Insurance Co. v. American Country Insurance Co.*, 366 Ill. App. 3d 64, 69 (2006); see also *Outboard Marine*, 154 Ill. 2d at 122; *Gaudina*, 2014 IL App (1st) 131264,

¶ 17.[7] Andrew is not a party to the contract, so his intent is not at issue. *Cf. Dwelle*, 839 So. 2d at 901 ("the lower court erroneously relied on [the child's] statement of future residency intent in deciding he was not entitled" to coverage under his parents' policies). Parents would be surprised to learn that, without any language to that effect in the contract, their college students' voter registration and driver's licenses would strip their children of coverage. State Farm does not cite a single case where a college student lost insurance coverage due to his or her voter registration or driver's license.[8] State Farm asks us to be the first.

---

[7] State Farm argues that Illinois courts have rejected the reasonable expectations doctrine and cites in support *Smagala v. Owen*, 307 Ill. App. 3d 213, 219 (1999). That is only partially correct. The reasonable expectations test is "used as a tool of construction in assessing the intent of the parties when a contract is ambiguous." *Smagala*, 307 Ill. App. 3d at 219. The test is not used when a " 'study of the policy provisions would have negated those expectations.' " *Smagala*, 307 Ill. App. 3d at 219 (quoting Robert E. Keeton, Basic Text on Insurance Law §6.3 (1971)).

[8] State Farm cited for a different point *State Farm Mutual Automobile Insurance Co. v. Differding*, 46 Ill. App. 3d 15, 20 (1977), in which the court

¶ 110     Almost all the cases cited by State Farm on this point are election cases. *Stein v. County Board of School Trustees*, 40 Ill. 2d 477, 479-80 (1968) (the issue was whether a petition was signed by two-thirds of the legal voters); *Anderson v. Pifer*, 315 Ill. 164, 167 (1924) (the issue concerned a contested election); *People ex rel. Madigan v. Baumgartner*, 355 Ill. App. 3d 842, 848 (2005) (the question was whether defendant had filed a false statement of candidacy, and it turned on the definition of residence in the Election Code for the purposes of voter registration); *Merrill v. Shearston*, 214 P. 540, 541 (Colo. 1923) (this was an election case where the issue was whether hospital inmates could vote). State Farm does not explain why the goals and purposes of the Election Code and insurance law are so closely aligned that the definition and rules contained in one should also govern the other.

¶ 111     The one non-election case cited by State Farm on this point is *Farmers Automobile Insurance Ass'n v. Gitelson*, 344 Ill. App. 3d 888 (2003), and State Farm cites it to argue that Andrew must prove an intent to return. The question in *Gitelson* concerned whether a "family member" presently resided in the

considered that a postgraduate student kept her parents' address on her driver's license, voter's registration card, library card, checking account and income tax statements in holding that she was "unemancipated." However, in the instant case, State Farm has never disputed the fact that Andrew is "unemancipated." In addition, unlike the policy here, the words "resident" and "reside" were specifically defined in the *Differding* policy, so that the *Differding* court was not applying the common meaning of those terms, as is the case here. *Differding*, 46 Ill. App. 3d at 19.

insured's "household," and we stated that "the controlling factor in determining [her present] residency is intent." *Gitelson*, 344 Ill. App. 3d at 890, 892. However, in the case at bar, we know Andrew was not presently dwelling in his parents' household; he was in Colorado. *Gitelson* does not stand for the proposition that a student who is "away" must prove an intent to return. There was no issue in *Gitelson* about whether the injured person was "away at college," because the definition of "family member" at issue there did not have that line and, in any event, the family member in question had already graduated college. Thus, *Gitelson* does not support the proposition that a college student who is "away" must prove an intent to return. See also *Dwelle*, 839 So. 2d at 901 ("the lower court erroneously relied on [the child's] statement of future residency intent in deciding he was not entitled" to coverage under his parents' policies).

¶ 112                          CONCLUSION

¶ 113          In sum, we conclude, first, that the trial court did not abuse its discretion by denying a motion for rehearing based on legal claims that were not previously advanced. Second, Andrew is covered under the Toigs' policies as a child away from school.

¶ 114          Affirmed.